UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES S. BUSH,

           Plaintiff,

    v.

K. SANTORO, et al.,

           Defendants.

Case No.: 1:20-cv-00015 JLT EPG (PC)

ORDER ON MOTIONS IN LIMINE

(Docs. 117, 119, 121–129)

## I.    FACTUAL BACKGROUND

James Bush is an inmate at North Kern State Prison.  He brings this action pursuant to 42 U.S.C. § 1983 alleging the use of excessive force against him, in violation of his Eighth Amendment rights.[1]  (Doc. 37 at 2–6; Doc. 106 at 2.) The parties have submitted several motions in limine regarding evidence expected to be presented at trial.  (*See* Docs. 117, 119, 121–29.) The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618.

### A.    LEGAL STANDARDS GOVERNING MOTIONS *IN LIMINE*

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

---

[1] Originally, Plaintiff named Rusmelinda Hilario and R. Flowers as defendants, asserting that they were deliberately indifferent to his medical needs.  (*See* Doc. 37 at 6.)  On March 6, 2023, Plaintiff filed a request for a voluntarily dismissal of Flowers and Hilario with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  (Doc. 77.)  The next day, Court dismissed both defendants.  (Doc. 78.)

1

1  practice has developed pursuant to the district court's inherent authority to manage the course of

2  trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that

3  motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having

4  to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985,

5  1004–05 (9th Cir. 2003) (citations omitted).

6       Courts disfavor motions in limine seeking to exclude broad categories of evidence. *See*

7  *Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is

8  almost always better situated during the actual trial to assess the value and utility of evidence."

9  *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained,

10  "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]."

11  *Sperberg*, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the

12  trial judge to ensure the expeditious and evenhanded management of the trial proceedings."

13  *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

14       "[A] motion in limine should not be used to resolve factual disputes or weigh evidence,"

15  *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the

16  province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The

17  Court will bar use of the evidence in question only if the moving party establishes that the

18  evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440. Ontge other

19  hand, the rulings on the motions in limine do not preclude either party from arguing the

20  admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a

21  change of circumstances that would make the evidence admissible.  In this event, the proponent

22  of the evidence **SHALL** raise the issue with the Court outside the presence of the jury.

23                    **II.    DISCUSSION**

24       **A.    Stipulated Motions in Limine**

25  The parties stipulate to the following:

26       •   Neither party will offer undisclosed expert witnesses or undisclosed expert

27           opinions via those witnesses, and neither party will seek expert opinion from lay

28           witnesses.

- Neither party will elicit testimony regarding the individual parties' financial condition, or that Defendants are indemnified by the California Department of Corrections and Rehabilitation.
- Defendants will not identify, in their opening statement, any specific individual as an alternative attacker who caused Plaintiff's alleged injuries.
- Plaintiff will not introduce any evidence of prior complaints, appeals, or grievances previously submitted by an inmate or individual against Defendants or CDCR witnesses or evidence from Defendants' personnel files regarding any staff complaints or reprimands.

(Doc. 119 at 1–2.) The Court accepts the stipulation**.**

### B.   Defendants' Motions in Limine

#### 1.   Motion in Limine No. 1 (Doc. 117): Exclusion of Witness Statements, Incident Reports, and Photographs

Defendants' first motion in limine requests the exclusion of several documents because they contain inadmissible hearsay, violate the Court's Protective Order in this case, "for which no order or agreement has been obtained to be presented at trial," or they would constitute cumulative evidence under Rule 403.  (*See* Doc. 117 at 2.)  Defendants also state that they reserve their rights to object to Plaintiff's exhibits and witnesses at trial.  (*Id.* at 5.)  The Court addresses each request in turn.

##### a.   Hearsay Objection

First, Defendants move to exclude the witness statements of four non-testifying inmates, collected during the internal investigation into Plaintiff's allegations.  (Doc. 117 at 3.) Defendants maintain that witness statements contained within the ISU's investigative report are hearsay for which no exception applies. (*Id.*) Defendants report that, "Plaintiff has neither made any showing as to [their] unavailability . . . nor indicated their intent to call" these witnesses. (*Id.*)

Defendants also move to exclude Plaintiff's grievance statement and witness statement, as well as twenty incident reports, interview statements, and witness statements.  (*Id.*)  They state that these "are all incomplete fragments of hearsay documents" and that "none of these statements

1  fall into a hearsay exception." (*Id.* at 4.)  Defendants only request that these exhibits "be

2  referenced for impeachment or rehabilitation purposes." (*Id.*)

3        Plaintiff indicates that he "likely *will not* seek to enter these documents into evidence but

4  included them on his exhibit list so they could be used at trial to refresh recollection, for

5  impeachment, or for any other identification-related purpose." (Doc. 132 at 2 (emphasis in

6  original).)  Furthermore, Plaintiff contests the applicability of the hearsay doctrine to several

7  incident reports and grievance statements and represents that he may "offer them for a non-

8  hearsay purpose" at trial, or alternatively, that they may fall into a hearsay exception.  (*Id.* at 2–3.)

9  The Court agrees that these documents are filled with varying levels of hearsay, though it agrees

10  also that there may be reasons that there may be information contained in the documents that are

11  admissible either due to an exception to hearsay or because the information is non-hearsay. Thus,

12  the Court **RESERVES** ruling on Defendants' Motion in Limine No. 1 (Doc. 117) as to hearsay.

13  Should either party seek to introduce these documents, they SHALL meet and confer in advance

14  to determine whether they can come to agreement as to the admissibility of any particular

15  document.

16                  *b.*    *Protective Order*

17        Next, Defendants note that the plaintiff has identified documents produced pursuant to the

18  protective order. (Doc. 117 at 4.)  However, the protective order does not preclude the use of the

19  material at trial. (Doc. 47 at 5.) Thus, the Defendants' Motion in Limine No. 1 (Doc. 117) is

20  **DENIED** on this ground. However, if either party intends to offer information from materials

21  covered by the protective order, they **SHALL** first meet and confer to determine whether they can

22  agree as to how the information will be handled. If they cannot agree, **before offering the**

23  **information at trial**, the proffering party **SHALL** raise the issue with the Court outside the

24  presence of the jury.

25                  *c.*    *Photographs of Defendants*

26        In Exhibit 1 of the parties' Joint Pretrial Statement, Plaintiff listed approximately forty-

27  one photographs he may introduce at trial.  (*See* Ex. 1, Doc. 106-1 at 2–4.)  These photographs

28  range from views of Plaintiff's prison cell to photographs of Defendants.  (*Id.*)  Defendants take

1 | issue with the latter, arguing the photographs are "unnecessary and cumulative, as all Defendants
2 | will be present at trial and any witness can identify them at that time." (Doc. 117 at 5.)

3 | Plaintiff explains that these photographs have probative value because of the passage of
4 | time since the events at issue such that witnesses may be more familiar with the appearances of
5 | these Defendants for the purposes of impeachment, refreshing recollection, or as substantive
6 | evidence if they fail to recognize them at trial. (Doc. 132 at 6.) Though the photos appear to be
7 | relevant, the plaintiff has not explained why all 41 are necessary, nor has the defense explained
8 | why any of the photos are overly prejudicial or cumulative. Fed. R. Evid. 403. Thus, Defendants'
9 | Motion *in Limine* No. 1 (Doc. 117) to exclude Plaintiff's proposed photographs is **RESERVED**.

10 | *d.* *Reservation of Rights*

11 | Defendants state their intent to "reserve their right to object to Plaintiff's exhibits and
12 | witnesses during the course of trial," such as on the grounds of relevance, Rule 403 balancing,
13 | and hearsay. (Doc. 117 at 5.) This reservation of rights is not a motion and does not require a
14 | ruling by the Court.

15 | 2. Motion in Limine No. 2 (Doc. 117): Witness Unavailability

16 | Plaintiff has indicated he "may wish to present by deposition under Rule 32(b)(4)" the
17 | testimony of four witnesses: Jaime Hernandez, Eric Eaves, Anthony Ramirez, and Matthew
18 | Frushon. (Doc. 133 at 2–3.) Of these, the plaintiff reports that only Mr. Ramirez and Mr. Frushon
19 | are still incarcerated with the CDCR and that Mr. Frushon is incarcerated at Salinas Valley State
20 | Prison. The defendants seek to preclude the use of deposition testimony in lieu of live testimony.
21 | (Doc. 117 at 6.)

22 | Notably, the Court has issued a writ for Mr. Ramirez to be transported to trial. (Doc. 114)
23 | Mr. Ramirez will travel nearly 400 miles because he was housed at High Desert State Prison in
24 | Susanville, California when the Court issued the writ. (Doc. 114) Mr. Bush was aware Mr.
25 | Ramirez was farther than 100 miles from the courthouse when he filed his motion to have Mr.
26 | Ramirez transported, because he noted at that time that Mr. Ramirez was housed at San Quentin
27 | State Prison, which is nearly 200 miles away from the courthouse. (Doc. 104 at 2) On the other
28 | hand, Mr. Bush did not identify Mr. Frushon as an incarcerated witness despite the Court's order

that he was required to do so (Doc. 83). Mr. Bush recognized this obligation in his motion related to Mr. Ramirez and another inmate-witness, Bautista (Doc. 104 at 2).

*a.      Videoconference Technology*

The Court must "give the Federal Rules of Civil Procedure their plain meaning. . . and . . . when [the Court] find[s] the terms unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (cleaned up) (internal quotation marks and citations omitted).  Rule 32(a)(4)(B) provides that a party may "use for any purpose" the deposition of a witness if the Court finds that the witness is more than 100 miles from the place of trial.  Fed. R. Civ. P. 32(a)(4)(B).  The Court will not allow a party to substitute deposition testimony for live, in-person testimony if the party offering the witness's deposition procured their absence.  *Id.*

Though Defendants note that it is "illogical that a party can claim that a witness is 'unavailable' because the witness is too far away," when the parties have stipulated to allow testimony by videoconference, they "concede this is a somewhat novel issue, and have been unable to find a case directly on point."  (Doc. 117 at 6, 7.)  In *In re Kirkland*, 75 F.4th 1030, 1044 (9th Cir. 2023), the Ninth Circuit determined that the 100-mile limitation for the issuance of a trial subpoena is effective even when the witnesses would be allowed to testify remotely. *Kirkland* noted, "A trial is a specific event that occurs in a specific place: where the court is located. . . No matter where the witness is located, how the witness 'appears,' or even the location of the other participants, trials occur in a court."  *Id*. at 1045 (emphasis in original) (footnote omitted).  Thus, "[w]hile technology and the COVID-19 pandemic have changed expectations about how legal proceedings can (and perhaps should) be conducted, . . . [the Court] [is] bound by the text of the rules."  *Id*. at 1046 (citation omitted).  Thus, *Kirkland* supports the plaintiff's argument as to those witnesses who are not in custody.

*Kirkland* did not have the occasion to discuss Rule 32 when the witness is incarcerated whose appearance at trial cannot be compelled absent a writ of habeas corpus. Though this raises an interesting issue, at least as of now, it is one the Court need not resolve. Though the plaintiff's opposition to the motion represents that Mr. Frushon is housed at Salinas Valley State Prison

(Doc. 133 at 3), he offers no evidence of this fact. Indeed, the online CDCR Inmate Locator fails to list any person by the name of Matthew Frushon currently incarcerated at any state prison. (https://apps.cdcr.ca.gov/ciris/results?lastName=Frushon&firstName=Matthew. Last visited 1/30/2024). More important, in an earlier motion, the plaintiff admits that Mr. Frushon has been released but, once again, offers no evidence of his location (Doc. 124 at 2).

Likewise, the plaintiff offers no evidence as to the locations of Mr. Hernandez[2] and Mr. Eaves. Though the plaintiff claims they live in Venice and Pomona, California, respectively, he fails to provide any evidence to support this claim. Thus, because there is no showing that these prospective witnesses live more than 100 miles from the courthouse, the Court **RESERVES** ruling on the defendants' Motion in Limine No. 2 (Doc. 117).

### b.    Alternative Requests

If Plaintiff is allowed to provide such deposition testimony—and, as noted above, the Court is not yet certain he will be allowed to do so—the defendants request the Court review their evidentiary objections raised during the depositions and provide rulings on such objections before the depositions are read into evidence.  (Doc. 117 at 7.)  Plaintiff "joins in this request," and agrees that he "will not read the excluded testimony" if the objections are sustained, and "will not read the objections or any related discussion among counsel in the transcripts" if the objections are overruled.  (Doc. 133 at 6.)

There are several flaws in this request.  First, of course, allowed to be read to the jury is only questions, answers, and any objections. Discussion among counsel clearly may not be read. Second, parties are not obligated to make all possible objections at a deposition (Fed. R. Civ. P. 32(d)(3)), though, of course, those that must be made and were not, are waived. There may be more objections that a party intends to make. Third, the Court has received only the transcript of Mr. Hernandez's deposition. Fourth, the plaintiff asserts he is confident only that he

---

[2] The Court notes that the CDCR has three people in custody at this time named Jaime Hernandez. https://apps.cdcr.ca.gov/ciris/results?lastName=hernandez&firstName=jaime. Last visited January 30, 2024. It is a common name, so the Court does not make much of this. However, coupled with the plaintiff's failure to present evidence of the witnesses' locations, it raises a red flag. Two of the people with this name are housed at Pleasant Valley State Prison, which is well within 100 miles of the courthouse.

7

1   will offer the deposition transcript of Mr. Frushon. Finally, the defendants assert that they should

2   be allowed to introduce "other parts of the deposition that should be considered with the part

3   introduced," pursuant to Rule 32(a)(6).[3]  (Doc. 117 at 7.)

4        Without knowing the full universe of the objections that may be made, the Court is

5   disinclined to expend its extremely limited resources evaluating the transcripts. Without all of the

6   transcripts, it cannot undertake this task, even if it had the resources to do so in advance of trial.

7   On the other hand, because there is no certainty that any of these witnesses will be presented via a

8   deposition transcript, it would be a ludicrous waste of time for the Court to spend the hours

9   needed to rule on all of the stated objections on the off chance there will be no further objections

10   and that the testimony will actually be offered via transcript. Thus, the Court may be forced to

11   rule on the objections as the transcript is read, as if the testimony were given live.

12        Based on the foregoing, the Court **ORDERS** the defendants to make their further

13   objections—to the extent there are any that have not been waived—and to designate the portions

14   of the relevant transcripts, which they believe are required to satisfy Rule 32(a)(6) while

15   explaining why these additional portions are required, no later than **February 1, 2024.** Then, no

16   later than **February 2, 2024**, the plaintiff may lodge any non-waived objections to the testimony

17   designated by the defense.

18        **C.**     **Plaintiff's Motions in Limine**

19          1.     Motion in Limine No. 1 (Doc. 121): Exclusion of Gang Evidence

20        Plaintiff moves to "exclude all argument, questioning, and evidence of gang affiliation"

21   pursuant Federal Rules of Evidence 403, 404, and 404(b)(1).  (Doc. 121 at 11.)   Specifically,

22   Plaintiff seeks to "exclude any evidence of any witness's gang affiliation whether admitted or

23   disputed;" "bar reference to gangs or gang affiliation in opening statements;" and "require

24

25   [3] Rule 32(a)(6) states that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."  Fed. R. Civ. P. 32(a)(6); see also Fed. R. Evid. 106.

26   This provision "exists to avert misunderstanding or distortion caused by introduction of only part of a document." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (citations omitted).  "The burden

27   of establishing the applicability of the rule of completeness falls on the party seeking to have a counter-designation played in the other party's case."  *In re Pac. Fertility Ctr. Litig.*, 2021 WL 2075560, at *1

28   (N.D. Cal. May 24, 2021) (internal quotation marks and citation omitted).

Defendants to raise any desire to ask questions, introduce evidence, or make arguments about gang affiliation by first proffering evidence outside the presence of the jury and obtaining the Court's permission." (*Id.*)  Plaintiff asserts gang-related evidence is "unfairly prejudicial" and "that prejudice substantially outweighs what little relevance the evidence could possibly have." (*Id.*)  Plaintiff further argues that such evidence carries "no probative value" because "Defendants could not articulate a single theory of relevance for any gang affiliation evidence or questioning during the meet and confer process" and only stated "that they might wish to introduce the evidence for vague impeachment reasons." (*Id.* at 9.)

Defendants assert they "do not intend to affirmatively present evidence of Plaintiff's or any witness's gang affiliation," but argue a blanket ban of gang affiliation evidence would unfairly prejudice them as it would prohibit Defendants from utilizing such evidence for rebuttal and impeachment purposes.  (Doc. 134 at 1–2.)  Pursuant to Federal Rule of Evidence 607, Defendants seek an order "allowing them to elicit testimony or evidence from these witnesses regarding their gang affiliation, when that exists, where the inmate claims that he has no gang affiliation or otherwise implicated gang issues, including but not limited to influence over that witness exerted by a gang member."  (*Id.* at 2.)

### a.   Gang Evidence

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401. Even if relevant, the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under Federal Rule of Evidence 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).  Similarly, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, evidence of a crime, wrong, or other act may be admitted for another

9

1   purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

2   mistake, or lack of accident.  Fed. R. Evid. 404(b)(2); *see also Stevenson*, 504 F. Supp. 3d at

3   1115.

4        The Ninth Circuit has held "evidence of gang affiliation is admissible when it is relevant

5   to a material issue in the case." *United States v. Thomas*, 2019 WL 3285801, at *2 (E.D. Cal.

6   2019) (citing *United States v. Easter*, 66 F.3d 1018, 1021 (9th Cir. 1995)).  In other words, gang

7   affiliation evidence is relevant if it tends to prove an element of the charged offense.  *Id.*

8   Nevertheless, such evidence is often deemed "unduly prejudicial" and excluded from admission

9   at trial under Federal Rules of Evidence 403 and 404(b).  The Ninth Circuit "has recognized time

10  and time again that gang evidence has the potential to be particularly prejudicial." *Howard v. City*

11  *of Los Angeles*, 2017 WL 11682193, at *6 (C.D. Cal. 2017) (quoting *Estate of Diaz v. City of*

12  *Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016)) (excluding evidence of the plaintiff's gang

13  affiliation in § 1983 case as unduly prejudicial under Fed. R. Evid. 403); *see also Kennedy v.*

14  *Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004) ("Our cases make it clear that evidence relating to

15  gang involvement will almost always be prejudicial[.]").

16       Though gang affiliation evidence is generally deemed substantially prejudicial and

17  excluded from admission at trial, Plaintiff's motion to "exclude all argument, questioning, and

18  evidence of gang affiliation" is overly broad because it incorporates evidence that is otherwise

19  admissible under other Rules.  The Court disfavors "[m]otions in limine that seek exclusion of

20  broad and unspecific categories of evidence." *Jackson v. Cnty. of San Bernardino*, 194 F. Supp.

21  3d 1004, 1008 (C.D. Cal. 2016). Accordingly, the Court **RESERVES** ruling on this motion. If

22  any party intends to ask witnesses questions that will elicit their membership in a gang, the party

23  SHALL raise the issue with the Court outside the presence of the jury.

24                      *b.    Hearsay Objections*

25       In the same motion, Plaintiff seeks to exclude "any testimony or argument related to

26  Alfred Ortega[4] including his alleged conversation with Flowers, his conversation with Jaime

---

[4] Alfred Ortega is an inmate and alleged leader of a prison gang, who allegedly had a phone call with
Plaintiff, encouraging Plaintiff to complain about the alleged beating rather than drop it. (Doc. 121 at 2.)
"Relying on [Ortega's] statement, Defendants seemed poised to argue that Ortega . . . instructed [Plaintiff]

Hernandez and Jaime Hernandez's recounting of that conversation, and any evidence or argument that he masterminded the fabrication of [Plaintiff's] allegations of excessive force" as inadmissible hearsay pursuant to Rules 801 and 802 of the Federal Rules of Evidence.  (Doc. 121 at 11–12 (cleaned up).)

Defendant opposes the motion, arguing that Flowers' testimony, including his interaction with Ortega, is admissible because it is "not being offered for the truth of the matter asserted" but rather for non-hearsay purposes, such as "to explain why Flowers remembers his interactions with Plaintiff." (Doc. 134 at 2.)

The motion to exclude, in essence, all references to Alfred Ortega is overly broad. Evidence demonstrating that bears on Flowers' credibility, including whether he had reason to lie, is permissible, though offering hearsay, without an exception is not. Thus, the Court finds it premature to rule on hearsay objections and **RESERVES** ruling until trial where parties may raise hearsay objections when evidence adduced at trial demonstrates inadmissible hearsay.

2.   Motion in Limine No. 2 (Doc. 122): Exclusion of Defense Expert Testimony

Originally, Plaintiff alleged that the March 20, 2019 excessive force incident caused him to lose his kidney.  (Doc. 122 at 1; Doc. 37.)  However, after consulting with medical experts, Plaintiff states that he abandoned this theory.  (Doc. 122 at 1.)  Now, Plaintiff brings this motion in limine to exclude from trial the proffered testimony of Defendants' medical experts— nephrologist, Dr. Michael Blumenkrantz, and urologist, Dr. Mark Vogel—because "[t]he resulting opinions from both defense experts are irrelevant" to his case, and inadmissible under Federal Rule of Evidence 702.  (*Id.* at 1–2.)

*a.   Abandoned Theory and Relevance*

Plaintiff indicates that he "will not argue at trial that he suffered a ruptured kidney from the alleged beating, or that Defendants' misconduct led to removal of his kidney or the subsequent infection he suffered.  Plaintiff will argue only that Defendants beat him, causing pain

---

to fabricate his allegations, and that somehow the non-party inmate witnesses only said [what] they said because of gang affinity." (*Id.*)

in his side, bruising, and internal bleeding leading to blood in his urine." (Doc. 122 at 2, 3–4.)
Plaintiff therefore contends that because he abandoned the claim that the event caused him to lose
his kidney, means that the testimony of Drs. Blumenkrantz and Vogel are irrelevant. (*Id.* at 3–4,
6–7.)

Defendants point out that Plaintiff still "intends to argue that he suffered from 'internal
bleeding leading to blood in his urine,'" and that the testimony of both medical experts address
this fact. (Doc. 135 at 3 ("Internal bleeding is an issue that invites medical opinion, and Dr.
Blumenkrantz's opinions regarding Plaintiff's underlying conditions assist the fact finder in
understanding why there was blood in his urine. . . [his] opinion identifies a source of the blood
that is contrary to Plaintiff's theory that excessive force caused him to bleed internally."), 4–5
(noting that Dr. Vogel explains "why Plaintiff had blood in his urine.").)

Preliminarily, the Court notes that in the parties' Joint Pretrial Statement, Plaintiff's
disputed facts set forth his allegation that "the beating caused him to urinate blood and resulted in
physical pain and emotional injuries." (Doc. 106 at 3.) Plaintiff also explains his belief "that the
most likely explanation for the blood in Plaintiff's urine on March 20, 2019 was blunt force
trauma." (*Id.* at 7.) The Court will address the relevance of each expert's proffered testimony in
turn.

<em>i.   Relevance</em>

<em>(a).   Dr. Blumenkrantz</em>

Plaintiff has attached Dr. Blumenkrantz's Report and Rebuttal Report in his separately
filed Appendix of Exhibits. (Exs. 9, 10, Docs. 120-9, 120-10.) In his expert report, Dr.
Blumenkrantz states, in relevant part:

> According to Mr. Bush, (JB 68) he was assaulted for no apparent
> reason and then noted blood in his urine. Doctors found he had a
> 'ruptured kidney', from the incident, that required immediate
> removal of the kidney.
>
> . . .
>
> After the altercation, Mr. Bush noted some blood in his urine,
> (hematuria 20RBC/HPF), (ABH18). Because of the hematuria, he
> was sent for a CT scan, which showed severe right sided
> hydronephrosis with high grade <u>chronic</u> ureteropelvic junction

> obstruction, (AHB 20), right renal cortical thinning and atrophy were present, indicative of a chronic UPJ obstruction, (TCM24) with severe ureteral narrowing and possible ureteral atresia, (DEF 2626).
>
> . . .
>
> In summary, Mr. James Bush alleged that he was involved in an altercation, which resulted in trauma to his left flank and blood in his urine.  He did have pain according to his testimony.  A CT scan was performed which incidentally showed a congenitally obstructed, scarred minimally functioning right kidney which was removed three months after the incident.  **He did not have a 'ruptured kidney' which required immediate removal.  His kidney damage was congenital, he did not have a 'life threatening' infection and 'complications' post nephrectomy.**  There is no support in the medical records for the plaintiffs' [sic] allegations.

(Ex. 29, Doc. 120-9 at 15, 16 (first emphasis in original) (second emphasis added).)  Further, in Dr. Blumenkrantz's rebuttal report, he opines, in pertinent part:

> I do not dispute Dr. Jain's opinion that **the alleged trauma on March 20, 2019 (the 'incident') is a reasonable explanation for the blood in James Bush's (Mr. Bush) urine**.
>
> . . .
>
> There is no support in the medical records that the alleged trauma that occurred on March 20, 2019, **caused any injury to Mr. Bush aside from a transient episode of hematuria**, which resolved spontaneously.

(Ex. 30, Doc. 120-10 at 2 (emphases added).)

The Court therefore disagrees with Plaintiff's assertions that "[n]one of the opinions in Blumenkrantz's affirmative report touch on issues the jury will be asked to decide," (Doc. 122 at 3), and that "Blumenkrantz's rebuttal report contains nothing relevant," (*id.* at 4), particularly after Dr. Blumenkrantz opines on the cause of Plaintiff's hematuria, even noting that the excessive force incident as a potential source.  (*See supra*.)  Plaintiff has stated, both in his instant motion and in the parties' Joint Pretrial Statement, that he will argue the "internal bleeding [led] to blood in his urine."  (Doc. 122 at 2, 4.)  Dr. Blumenkrantz's report and rebuttal report both address this subject.  Therefore, his opinions are relevant.  Fed. R. Evid. 401, 702.

///

13

1

*(b).    Dr. Vogel*

2

Dr. Vogel provides several opinions regarding Plaintiff's hematuria, stating in his expert

3

report:

4

5

6

7

> [T]he medical records reflect that: (1) Mr. Bush suffered from a congenital obstructed kidney prior to the alleged incident; (2) the March 20, 2019 dipstick urinalysis performed at North Kern at approximately 7:34 p.m. showed a moderate amount of blood present in Mr. Bush's urine[], **which can be consistent with his congenital kidney obstruction[.]**

8

> . . .

9

10

11

12

13

14

> The CT scan did not demonstrate a ruptured kidney or other signs of abdominal trauma to Mr. Bush's kidney as would be consistent with the injuries Bush alleges he suffered at the hands of Defendants.  **If a use-of-force injury aggravated Bush's pre-existing kidney, I would expect to see fluid or blood around Mr. Bush's kidney, which should have been visualized on the CT scans**.  The findings, however, as interpreted by the hospitalist at Adventist Health in Bakersfield and myself, did not show any fluid or blood, and, accordingly, the findings were consistent with someone with a ureteropelvic obstruction, **not a use-of-force injury**.

15

(Ex. 31, Doc. 120-11 at 16, 23 (footnote omitted) (emphases added).)  Additionally, Dr. Vogel's

16

rebuttal report states that he "[does] not dispute Dr. Jain's opinion that the alleged trauma on

17

March 20, 2019 is a reasonable explanation for the blood in [Plaintiff's] urine later that day."

18

(Ex. 32, Doc. 120-12 at 2.) These expert opinions are relevant to this case. *See Elosu v.*

19

*Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("Expert opinion testimony is

20

relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.") (internal

21

quotation marks and citation omitted).

22

*iii.    Rule 702 Admissibility*

23

Plaintiff moves to exclude the medical expert opinions of Drs. Blumenkrantz and Vogel

24

because he believes that (1) Dr. Blumenkrantz's opinion is unexplained; (2) Dr. Vogel's opinions

25

are unreliable; and (3) together, their opinions present cumulative evidence under Rule 403, such

26

that they will waste time at trial.  (*See* Doc. 122 at 5–6, 7–9.)

27

The admission or exclusion of expert testimony is a matter within the discretion of the

28

district court.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  A witness who is

qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"To carry out its gatekeeping role, a district court must find that an expert's testimony is reliable – an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (citations omitted). "For some experts, the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* (internal quotation marks and citation omitted). "In such cases, the inquiry may cover whether the expert's experience supports the expert's conclusions, . . . whether the expert's reasoning is circular, speculative, or otherwise flawed, . . . or whether the expert's reasoning is adequately explained." *Id.* (internal citations omitted). To evaluate reliability, the Court "must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *Elosu*, 26 F.4th at 1024 (internal quotation marks and citation omitted). "These factors are nonexclusive," and the Court has discretion to determine reliability on a case-by-case basis. *Id.*

"Ultimately, 'the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Elosu*, 26 F.4th at 1024 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)). Finally, the Court may not make credibility determinations, determine whether the expert is "right or wrong," and cannot weigh the evidence. *See id.* at 1028 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (internal quotation marks and citation omitted). Instead, the Court is only looking for the expert's explanation of "how and

1  why" they reached their conclusion(s).  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997).

2                                              *(a).    Dr. Blumenkrantz*

3          Plaintiff contests the reliability of Dr. Blumenkrantz's opinion, averring that his opinion is

4  "unexplained," as demonstrated by his failure to "explain how he drew on [his] experience or his

5  medical training to reach the sweeping conclusion that 'there is no support in the medical records

6  for the plaintiff's allegations.'"  (Doc. 122 at 6 (citing Ex. 29, Doc. 120-9 at 16).)  "Nor does he

7  tell the court *why* Bush's allegations are impossible."  (*Id.* (emphasis in original).)  Defendants

8  disagree, stating "Dr. Blumenkrantz's extensive experience indicates that his opinions are the

9  product of reliable principles and methods and that his opinion reflects a reliable application of

10 those principles."  (Doc. 135 at 4.)

11         The Court finds Dr. Blumenkrantz's report to be minimally adequate. He indicates that he

12 reviewed over 7,000 pages of medical and other records, which form the basis of his conclusions

13 that, though the event was a "reasonable explanation" for the blood in Mr. Bush's urine and why

14 Mr. Bush did not suffer a ruptured kidney requiring immediate removal. Dr. Blumenkrantz notes

15 that the kidney was removed three months later and that the records do not support that Mr.

16 Bush's congenital condition was life threatening or that he has suffered complication as a result.

17 Thus, the Court **DENIES** Plaintiff's Motion in Limine No. 2 (Doc. 122) as to Dr. Blumenkrantz.

18                                              *(b).    Dr. Vogel*

19          Plaintiff argues that the Court should exclude the opinion testimony of Dr. Vogel because

20 his deposition testimony abandoned and contradicted opinions proffered in his expert report, such

21 as in his response to a line of deposition questioning, where he made a "complete about-face."

22 (Doc. 122 at 8.) Evidence that a party may use to impeach an opposing party's expert witness

23 may not result in the exclusion of that witness on admissibility grounds.  "Basically, the judge is

24 supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely

25 because they are impeachable."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960,

26 969 (9th Cir. 2013).  "The district court is not tasked with deciding whether the expert is right or

27 wrong, just whether his testimony has substance such that it would be helpful to a jury," and

28 impeachable evidence—such as an expert's potential abandoned theory or contradictions in

deposition testimony—"all go to the weight of the testimony and its credibility, *not its admissibility*."  *Id.* at 969–70 (emphasis added).  Instead, the Court reiterates that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, *not exclusion*."  *Elosu*, 26 F.4th at 1024 (emphasis added). Accordingly, Plaintiff's Motion in Limine No. 2 (Doc. 122) is **DENIED** as it relates to the exclusion of Dr. Vogel's proffered testimony.

### 3.    Motion in Limine No. 3 (Doc. 123): Exclusion of Correctional Officer Testimony

Plaintiff seeks to exclude the testimony of four non-defendant correctional officers— Shaine Jensen, Issac Lozano, Ronaldo Lira, and Carlos Montoya—as irrelevant under Rule 401 of the Federal Rules of Evidence and should, therefore, not be admitted.  (Doc. 123 at 1, 3) Plaintiff argues,

> [the] testimony does not make any fact the jury must decide in this excessive force case more or less probable. . ..  None of the correctional officers testified that he watched the entire incident unfold and saw that no beating happened, so their testimony does not shed light upon Defendants' liability, let alone exonerate them.

(Doc. 123 at 3.)  Plaintiff asserts that "[a]llowing Defendants to parade correctional officers who didn't see the relevant events . . . would only confuse and mislead jurors, and . . . greatly prejudice Plaintiff."  (*Id.* at 4.)  Therefore, in accordance with Rule 403, "Defendants should be barred from calling the third-party witnesses at trial." (*Id.*)  Alternatively, Plaintiff seeks to exclude the testimony as "cumulative" under Rule 403, asserting "the testimony of these four third-party officers substantially and needlessly overlaps."  (*Id.* at 5.)

Defendants assert Plaintiff's relevancy argument is flawed because it "presumes the truth of Plaintiff's allegations . . . [which] is not the law."  (Doc. 136 at 2.)[5] Defendants continue that "testimony by witnesses present during the underlying incident would make the fact more or less probable" and "whether or not Plaintiff's allegations occurred is a fact of consequence."  (*Id.* at 3.)  Defendants also argue the testimony is not cumulative because "each witness provides a different perspective or performed a different role during the search of Plaintiff's cell."  (*Id.* at 4.)

---

[5] Defendant notes that the witnesses whose testimony the plaintiffs seeks to preclude appear on the plaintiff's witness list. (*See* Doc. 136 at 1 (citing Doc. 111).)

Plaintiff's relevancy and cumulative evidence arguments are unpersuasive.  Based upon the evidence before the Court, it finds the testimony of witnesses present during the alleged incident relevant.  The Court also finds Plaintiff has failed to show how the relevant testimony's probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Accordingly, the motion is **DENIED**.

Furthermore, Defendant has identified the witnesses at issue as percipient witnesses.[6]  A "percipient witness" can testify about observations based on personal knowledge and can use their expertise to explain their testimony to the jury. Fed. R. Evid. 702; s*ee also Young v. Allstate Co.*, 2023 WL 2456545, at *1 (C.D. Cal. 2023). Thus, to the extent Plaintiff's motion seeks to prohibit Defendants' witnesses from offering these observations, the portion of the motion is **DENIED**.

### 4.     Motion in Limine No. 4 (Doc. 124): Exclusion of Previous Crimes

Plaintiff's seeks to preclude the defense from inquiring about the convictions suffered by four percipient inmate-witnesses.  (Doc. 124 at 1.)  Plaintiff states that during these witnesses' depositions, defense counsel interrogated each individual regarding their "crimes of conviction and criminal histories."  (*Id.* at 2.)  Plaintiff argues this evidence (1) is not relevant under Rules 401 and 402; (2) its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403; and (3) regarding both Plaintiff and Eric Eaves, Defendants failed to satisfy Rule 609(b)'s requirements to allow admission of their decades-old convictions.  (*See id.* at 2–5.)

Defendants respond by noting that the credibility of both Plaintiff and his proposed witnesses is a central issue to this trial.  (Doc. 137 at 1.)  Moreover, according to Defendants, Rule 609 allows for the admission of prior convictions to attack a party or witness's credibility.  (*See id.* at 2–5.)

### a.     Threshold Issue: Matthew Frushon's Deposition

---

[6] Rule 701 provides that a "lay witness" may offer "testimony in the form of an opinion" if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 702.

1   Plaintiff notes that he intends to call the witness testimony of Matthew Frushon by

2   deposition.  (Doc. 124 at 2 n.1.)  Plaintiff argues that because "Defendants declined to designate

3   any testimony from Frushon for presentation at trial[,] . . . Defendants [have] therefore waived

4   their right to introduce criminal history testimony from that deposition."  (*Id.*)

5   Local Rule 281 requires the joint pretrial statement to include the following information:

6   "A list (names and addresses) of all prospective witnesses, whether offered *in person or by*

7   *deposition* or interrogatory, designating those who are expert witnesses.  Only witnesses so listed

8   will be permitted to testify at the trial, except as may be otherwise provided in the pretrial order."

9   *Id.* § (b)(10) (emphasis added).  The deposition testimony of Matthew Frushon is included in

10  Defendants' witness list.  (*See* Ex. 4, Doc. 106-4 at 2, line 8.) This is sufficient even without the

11  designations. Local Rule. 281(b)(10); *Martin v. City of Vallejo*, 2016 WL 2764741, at *7 (E.D.

12  Cal. May 12, 2016.  Defendants do not intend to proffer the testimony of Frushon in their case-

13  in-chief; they only intend to utilize the deposition transcript "for impeachment purposes at trial."

14  (Doc. 137 at 4 n.1.)  Defendants have adequately complied with this District's Local Rules and

15  therefore may introduce deposition testimony from Matthew Frushon.

16  *b.   Prior Criminal Histories*

17  The parties seem to agree that the jury will have to determine whether the witnesses

18  proffered by both sides, are credible. If a witness has been convicted of a crime bears on this

19  question. Fed.R.Evid. 609.

20  Plaintiff is currently serving a 30-year-to-life sentence for murder. He has also suffered a

21  30-year-old conviction for "false identification to a police officer," for which he received one

22  year of probation, and a "decades-old conviction for possessing a bad check."  (Doc. 124 at 2

23  (internal quotation marks omitted).)  Each percipient-prisoner witness is incarcerated for the

24  following reasons: (1) Christopher Bautista committed assault with great bodily injury; and (2)

25  Anthony Ramirez is incarcerated for felony possession of a firearm; (3) Matthew Frushon, Eric

26  Eaves and Jaime Hernandez—who are no longer incarcerated—were in prison for robbery,

27  attempted robbery and robbery with the discharge of a firearm, respectively.  (*See id.* at 2–3

28  (citations omitted).)

Federal Rule of Evidence 609[7] allows a witness's character for truthfulness to be attacked by evidence of a criminal conviction for a crime that is punishable by imprisonment for more than one year and for any crime proving a dishonest act or false statement. Fed. R. Evid. 609(a). The Rule limits the use of convictions where it has been more than 10 years since the conviction or release from confinement for it, whichever is later. Fed. R. Evid. 609(b). "[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." *United States v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007) (internal quotation and citation omitted). Though this evidence is prejudicial—there would be no reason to introduce any evidence if it didn't prejudice one's opponent—the evidence does not present a risk of unfair prejudice. For these reasons, if there is evidence a witness has suffered a felony conviction permitted to be introduced by Rule 609, relevant questions about the conviction may be asked.

In addition, plaintiff's conviction for false identification to a police officer may be admitted because, on its face, this is a crime of dishonesty. However, the Court cannot readily discern the elements of "possession of a bad check." Thus, unless the plaintiff has admitted he was engaged in dishonesty related to this conviction, it will not be admitted. As to Mr. Eaves, the Court agrees that his conviction for forgery can be admitted because this too is a crime of dishonesty on its face. Therefore, the motion is **DENIED in PART and RESERVED in PART.**

### 5.      Motion in Limine No. 5 (Doc. 125): Exclusion of Disciplinary History[8]

The plaintiff moves for an order precluding the defense from eliciting testimony or making arguments at trial about any of the witnesses' prison disciplinary histories or prior bad acts because: (1) this evidence is irrelevant under Rules 401 and 402; (2) it is inadmissible character evidence under Rule 404(b)(1); and (3) pursuant to Rule 403 balancing, the probative value of these witness's disciplinary history is outweighed by the risk of unfair prejudice.  (*Id.* at 2–3.)

---

[7] The argument that the plaintiff does not have advance written notice of the intent to offer evidence of crimes over 10 years old, is belied by the opposition filed to the plaintiff's motion.

[8] The plaintiff reiterates its arguments about the defense using the deposition transcript from Mr. Frushon. The Court has ruled on this topic above.

1   Defendants indicate that they "are not seeking to introduce evidence of any inmate's

2   disciplinary history at trial," but disagree that they cannot offer such evidence for rebuttal or

3   impeachment purposes pursuant to Federal Rule of Evidence 607.  (Doc. 138 at 2.)

4   Plaintiff has not provided any information about any prison discipline records at issue, so

5   the Court cannot evaluate whether use of these prisoner-witnesses' disciplinary records is proper

6   impeachment matter or whether it relates to the witnesses' credibility.  As such, Plaintiff's

7   Motion in Limine No. 5 (Doc. 125) is **RESERVED**. However, if the disciplinary records will be

8   used for any reason, the party **SHALL** raise the issue with the Court outside the presence of the

9   jury to allow the Court to consider the specific record at issue and issue a ruling.

10   6.   Motion in Limine No. 6 (Doc. 126): Exclusion of Hernandez Stabbing

11   Evidence

12   Plaintiff seeks to exclude "evidence, argument, and questioning" surrounding inmate

13   witness Jaime Hernandez's disciplinary write-up for stabbing another prisoner.  (Doc. 126 at 3.)

14   According to Plaintiff, the prison records claim Hernandez stabbed the prisoner because Alfred

15   Ortega, who is an inmate and is alleged to be a gang leader, told him to do so. (*Id*. at 2.)  Plaintiff

16   argues the evidence is irrelevant because it occurred seven months after the alleged incident and

17   "has nothing to do with liability, damages, or credibility." (*Id*. at 3.)  Alternatively, Plaintiff

18   argues the evidence's "probative value is substantially outweighed by the danger of unfair

19   prejudice."  (*Id*.)

20   Defendants argue the evidence of Hernandez stabbing another prisoner "at the behest of

21   Ortega" is relevant for impeachment and rebuttal.  (Doc. 139 at 2.) The plaintiff offers no

22   reasonable explanation for why a witness may not be impeached with evidence that demonstrates

23   he is being untruthful. However, the Court will not allow the defense to gratuitously introduce

24   evidence that Hernandez or Ortega are gang members. Rather, counsel may question Hernandez

25   about his actions, his consultation with Ortega, and animus toward correctional staff. At this time,

26   the Court does not anticipate that the information about their gang relationship will be introduced,

27   but it cannot speculate as how this testimony will proceed. Thus, the Court **RESERVES** ruling

28   on this motion.

1        7.     Motion in Limine No. 7 (Doc. 127): Allowing Plaintiff to Lead Ramirez

2        Pursuant to Federal Rule of Evidence 611(c)(2), Plaintiff requests permission to treat

3 witness Anthony Ramirez as "hostile" and allow leading questions.  (Doc. 127 at 1.) Plaintiff

4 asserts that Ramirez was "visibly hostile and agitated" during his deposition and explicitly stated

5 that he did not want to answer any questions.  (*Id*. at 2.)  Plaintiff explains that "[a]lthough

6 Ramirez continued answering questions, after being told he could not leave the deposition room,

7 he started testifying that he did not remember things he'd just discussed.  He also began changing

8 the answers he'd given earlier in the deposition." (*Id.*) Plaintiff further asserts Ramirez said he

9 did not want to answer questions, feigned an inability to remember basic facts, gave inconsistent

10 answers and refused to respond to a letter sent by the plaintiff's attorney to meet in advance of

11 trial "to prepare his testimony for trial." (*Id*. at 3-4.) The plaintiff concludes that because Ramirez

12 has been deposed and gave a statement during investigation, there is little likelihood that asking

13 leading questions will pressure the witness to respond inaccurately.

14        Notably, none of these explanations demonstrate that Mr. Ramirez is a hostile witness

15 under Rule 611(c)(2). Though he stated that he did not wish to answer questions, he did not

16 indicate any greater desire to answer the defense counsel's questions. After being told he could

17 leave, Ramirez chose to stay and complete the deposition. The fact that he changed his testimony

18 or failed to be as forthcoming as counsel would like, is a common occurrence at deposition and at

19 trial and it occurs for any number of reasons, which the jury will sort through. Finally, the mere

20 fact that Ramirez has been deposed after having given a prior statement is not a sufficient

21 showing under Rule 611(c)(2). If it were, most witnesses would qualify for this treatment.

22        Defendants oppose the motion, arguing Plaintiff has not satisfied the requirement of Rule

23 611(c)(2) and has failed to show that Ramirez "will be resistant to suggestion" and "bias[ed]

24 against Plaintiff." (Doc. 140 at 2.)  Therefore, "any preemptive designation of Ramirez as hostile

25 is unwarranted and premature."  (*Id.*)

26        Federal Rule of Evidence 611 creates a general rule that leading questions should not be

27 used on direct examination except in limited circumstances, and the Court has broad discretion in

28 determining whether to allow leading questions under the Rule.  The Court has reviewed the

1    entire transcript and finds no widespread reluctance on Mr. Ramirez's part. The fact that he did

2    not testify as the plaintiff would like or is unwilling to participate in preparation by counsel, does

3    not equate to a witness who is hostile. As such, the motion is **DENIED**.

4           8.      Motion in Limine No. 8 (Doc. 128): Reference to Hilario and Flowers

5           Plaintiff expects that nurse Rusmelinda Hilario and Correctional Officer Rafael Flowers

6    will be witnesses at trial.  (Doc. 128.)  He states that if they do, he may wish to impeach them on

7    bias grounds and argues that because he named them as defendants initially, they have reason to

8    be biased against him. (*Id.*) Thus, the plaintiff wants to refer to them as "former defendants,"

9    while at the same time, precluding them from explaining that the lawsuit resolved favorably to

10   them.

11          Defendants represent that they "do not oppose Plaintiff's reference to the former

12   involvement of these witnesses in this case, but, should Plaintiff elect to do so, Defendants are

13   entitled to rehabilitate them with evidence of Plaintiff's voluntary dismissal." (Doc. 141 at 2.)

14   The Court agrees. The plaintiff cannot have it both ways. If he chooses to introduce the fact that

15   they were formerly defendants in this action for purposes of demonstrating their bias, they get to

16   explain why this does not create a bias including that the lawsuit resolved favorably. Thus, the

17   plaintiff's Motion in Limine No. 8 (Doc. 128) is **DENIED**.

18                                        **ORDER**

19          Based upon the foregoing, the Court **ORDERS**:

20          1.      The parties' stipulations (Doc. 119) are accepted.

21          2.      Defendants' motion in limine number 1 (Doc. 117) is **RESERVED in PART** and

22   **DENIED in PART**.

23          3.      Defendants' motion in limine number 2 (Doc. 117) is **RESERVED**.

24          4.      Plaintiff's motion in limine number 1 (Doc. 121) is **RESERVED**.

25          5.      Plaintiff's motion in limine number 2 (Doc. 122) is **RESERVED**.

26          6.      Plaintiff's motion in limine number 3 (Doc. 123) is **DENIED**.

27          7.      Plaintiff's motion in limine number 4 (Doc. 124) is **DENIED in PART and**

28   **RESERVED in PART**

8.      Plaintiff's motion in limine number 5 (Doc. 125) is **RESERVED**.

9.      Plaintiff's motion in limine number 6 (Doc. 126) is **RESERVED**.

10.      Plaintiff's motion in limine number 7 (Doc. 127) is **DENIED**.

11.      Plaintiff's motion in limine number 8 (Doc. 128) is **DENIED**.

Counsel SHALL discuss the rulings with their clients and witnesses to ensure compliance with this order.

IT IS SO ORDERED.

Dated:    **January 31, 2024**

UNITED STATES DISTRICT JUDGE