1

2

3

4

5

6

7

8                         **UNITED STATES DISTRICT COURT**

9                         **EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMES S. BUSH,                            Case No. 1:20-cv-00015-JLT-EPG

12                    Plaintiff,               ORDER DENYING DEFENDANTS'
                                               RENEWED MOTION FOR JUDGMENT AS
13            v.                               A MATTER OF LAW; AND DENYING
                                               CONDITIONALLY THE ALTERNATIVE
14   PASCUAL IBARRA, EVERARDO                  MOTION FOR A NEW TRIAL OR
     HERNANDEZ,                                AMENDMENT OF THE JUDGMENT *IF*
15                                             PLAINTIFF ACCEPTS THE REMITTITUR
                     Defendants.               OF THE COURT
16
                                               (Docs. 202, 207)
17

18

19          The matter before the Court arises from James Bush's claim for excessive force brought

20   against Officers Pascual Ibarra, Everardo Hernandez, and Jose Ceja. After a trial, the jury found

21   in favor of Ceja but found against Ibarra and Hernandez.  The jury awarded compensatory and

22   punitive damages. Pending before the Court is Ibarra and Hernandez's renewed motion for

23   judgment as a matter of law pursuant to Federal Civil Procedure Rule 50(b) and alternative

24   motion for a new trial or amendment of the judgment[1] pursuant Federal Civil Procedure Rule 59.

25   For reasons discussed below, the Court **DENIES** Defendants' renewed motion for judgment as a

26   matter of law and **DENIES** Defendants' alternative motion for a new trial on the condition that

27   _____

28   [1] The Court construes this request as an alternative request for a conditional order of remittitur under Rule
     59.

                                                       1

1  Plaintiff accepts the order of remittitur to reduce the excessive compensatory and punitive

2  damages awards.

3                                    **BACKGROUND**

4          On March 14, 2024, Defendants filed a renewed motion for judgment as a matter of law

5  pursuant to Federal Civil Procedure Rule 50(b) with an alternative motion for a new trial or

6  amendment of the judgment pursuant to Federal Civil Procedure Rule 59 (Doc. 202) and an

7  Administrative Motion to Establish Briefing Schedule on Post-Trial (Doc. 203).[2] On March 29,

8  2024, Defendants supplemented its Rule 50(b) motion with additional briefing (Doc. 207), and

9  Plaintiff timely filed its Opposition (Doc. 212).[3]  Defendants filed a Reply (Doc. 213) on May

10  17, 2024.[4]  Pending before the Court is Defendants' Rule 50(b) renewed motion for judgment as

11  a matter of law and alternative motion for a new trial or amendment of the judgment (Doc. 202).

12      **A. Procedural Posture: Defendants' Concurrently filed Motions**

13          In determining whether to a grant or deny a party's motion for judgment as a matter of

14  law, the Court reviews the evidence in the record, draws all reasonable inferences in favor of the

15  non-moving party, and grants the motion if there is "there is no legally sufficient evidentiary basis

16  for a reasonable jury to find for that party on that issue." *See Reeves v. Sanderson Plumbing

17  Prods., Inc.*, 530 U.S. 133, 149–50 (2000).  Though permissible for the Court to review the entire

18  record, its judiciary purview and discretion are limited.  The Court must disregard all evidence

19  favorable to the moving party that the jury is not required to believe.  *See Reeves*, 530 U.S. at 151

20  (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995));

21  *see also Smith v. City of Los Angeles*, No. 2:19-CV-05370-CAS(JCX), 2025 WL 57327, at *3

22

23  [2] Defendants' administrative motion (Doc. 203) requested "leave to file a more comprehensive memorandum of points and authorities with more thorough citation to evidence and law." (Doc. 202 at 5.) Defendants explained its efforts to comply with the briefing schedule but "recently received the trial

24  transcripts" (*Id.*) and "require more time to more thoroughly review and provide additional detail per the administrative motion" (*Id.* at 5, fn.1). Plaintiff timely opposed (Doc. 204) and Defendants filed a Reply

25  (Doc. 205).  On March 20, 2024, the Court granted Defendants' administrative motion (*see* Doc. 206), and Defendants filed its supplement brief (Doc. 207).

26  [3] Plaintiff requested a 14-Day extension to respond to Defendants' post-trial motion (*see* Doc. 208) and administrative relief to exceed the page limit (Doc. 210).  The Court issued an Order (Docs. 209, 211)

27  granting Plaintiff's requests.

28  [4]  An Amended Transcript of the Proceedings held on February 13, 2024 (Doc. 217) was filed on September 16, 2024.

(C.D. Cal. 2025).  In other words, if there is substantial evidence presented at trial to create an issue for the jury, a trial court may not grant a motion for judgment notwithstanding the verdict. On the other hand, the Court "enjoys considerable discretion" in deciding whether to grant a new trial.  *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (internal quotation marks omitted).  "The existence of substantial evidence does not . . . prevent the court from granting a motion for a new trial pursuant to Fed. R. Civ. P. 59 if the verdict is against the clear weight of the evidence." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  The Court's power to grant a motion for new trial is "much broader" than its power to grant a motion for judgment as a matter of law.  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000).  "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id.*  Even if "substantial evidence supports the jury's verdict," the Court may grant a motion for a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon false evidence, or if the court otherwise finds in its discretion that the verdict would result in a miscarriage of justice.  *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).  Under Federal Civil Procedure Rule 59, "[t]he judge can weigh the evidence and assess the credibility of witnesses and need not view the evidence from the perspective most favorable to the prevailing party." *Id.*  (citing *Fount–Wip, Inc. v. Reddi-Wip, Inc.,* 568 F.2d 1296, 1302 (9th Cir. 1978)).  Despite having precedented permissible authority to set aside the verdict, "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes*, 833 F.2d at 1371.  "If, however, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." *Landes*, 833 F.2d at 1371-72 (citing C. Wright & A. Miller, Federal Practice & Procedure § 2806 at 48-49 (1973)).  Considering the discretional disparity, the Court addresses Defendants' Rule 50 and Rule 59 motions separately and begins with Defendants' Rule 50(b) judgment as a matter of law motion and arguments.

1  **B. Defendants' Rule 50(a) Motion for Judgment as a Matter of Law**

2      At trial, Defendants counsel moved for judgment as a matter of law explaining,

3      Our position is that based on Mr. Bush's testimony that he was kicked three times,
4      that he was not punched in the stomach, that he was not punched repeatedly in the
       face, and that he was not kneed all over his body, that it is not reasonable for a jury
5      to find that either Ceja or Hernandez engaged in those actions.

6  (*see* Doc. 217 at 79-81.)  Plaintiff counsel countered, stating the defendants' grounds for

7  judgment are merely issues of credibility and resolving credibility is a role solely for the jury.  In

8  effort to better preserve the record, Defendants counsel clarified its argument explaining,

9          There's a standard for a motion for summary judgment, like a Rule
10         50 motion that no reasonable jury could find based on directly
           contradicted facts.   And we have Mr. Bush's testimony that is
11         extremely clear regarding these two defendants that he's not aware
           of who struck him.   He also is contradicting directly what Mr.
12         Bautista said occurred regarding repeated punches in the face.   We
           can also look at the video evidence that we just saw, which
13         demonstrates that he does not have any physical injuries that
           corroborate that.

14  (*Id.* at 83.)  Again, Plaintiff counsel asserted the argument does not warrant judgment explaining,

15  "Rule 50 motion is the same as … motion for summary judgment" and recalled the witnesses that

16  identified each defendants' use of force (*Id.*); therefore, Defendants' arguments "may be an

17  appropriate jury argument about credibility, but it's not a Rule 50 argument." (*Id.* at 82.)  In

18  ascertaining the basis of the parties' arguments, this Court noted:

19
20         I think what you seem to be suggesting, and maybe that's
           something to clarify, is Mr. Bush's testimony is inconsistent with
21         these other witnesses.   He's denying these things occurred.
           Plaintiff's counsel seems to say, doesn't matter, we got a witness
22         saying it happened, so we're going to go with that.   Is that what
           you're saying?

23  (*Id.*) The parties' counsel replied:

24         MR. KAYES: [5] Yes, Your Honor.  I think Mr. Faulconer can argue
           his interpretation of the testimony to the jury.

25
26         MR. FAULCONER: [6] Maybe to clarify argument.  It's issue, Your
           Honor.   Because no witness and no evidence has identified
27         defendants Hernandez or Ceja.  And that's the only evidence.  And

---

28  [5]  Plaintiffs' counsel.
     [6]  Defendants' counsel.

1  |  because it's directly contradicted by Mr. Bush's testimony, as well
2  |  as other witness's testimony, we do think no reasonable jury would
   |  find – that's our argument, Your Honor.

3  (*Id.* at 84.)  The Court took the Defendants' motion under submission and the action proceeded to

4  the jury for decision.  *See* Fed. R. Civ. P. 50(b) (If the court "does not grant a motion for

5  judgment as a matter of law," then the court "is considered to have submitted the action to the

6  jury subject to the court's later deciding the legal questions raised by the motion.").  *See* Fed. R.

7  Civ. P. 50(b).  In the section to follow, the Court considers Defendants' renewed motion for

8  judgment as a matter of law in which Defendants contend no reasonable jury could have found

9  Plaintiff met its burden to prove Hernandez and Ibarra subjected Plaintiff to excessive force.  (*See*

10  Docs. 202, 207).

11  ## I.  MOTION FOR JUDGMENT AS A MATTER OF LAW

12  ### A.  Federal Civil Procedure Rule 50

13  Motions for judgment as a matter of law are governed by Federal Civil Procedure Rule

14  50(a).  While Rule 50(a) governs pre-verdict motions, Federal Civil Procedure Rule 50(b)

15  governs post-verdict motions.  "A motion for judgment as a matter of law under Rule 50(b) is not

16  a freestanding motion, but a renewed Rule 50(a) motion."  *Vahora v. Valley Diagnostics*

17  *Laboratory, Inc.*, No. 1:16-CV-01624-SKO, 2019 WL 5960205, at *4 (E.D. Cal. 2019).  A party

18  may renew its Rule 50(a) motion under Rule 50(b) if at trial, the judge denies or defers ruling on

19  the party's Rule 50(a) motion and the jury returns a verdict against the moving party.  "[A] Rule

20  50(b) motion is limited to the grounds and arguments asserted in the pre-deliberation Rule 50(a)

21  motion."  *Vahora*, 2019 WL 596025 at *4 (citing *EEOC v. Go Daddy Software, Inc.*, 581 F.3d

22  951, 961 (9th Cir. 2009).  A party cannot properly "raise arguments in its post-trial motion for

23  judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a)

24  motion." *Go Daddy Software*, 581 F.3d at 961 (quoting *Freund v. Nycomed Amersham*, 347 F.3d

25  751, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991

26  amendments ("A post trial motion for judgment can be granted only on grounds advanced in the

27  pre-verdict motion.")).  However, a Rule 50(b) motion "may be satisfied by an ambiguous or

28  inartfully made motion" under Rule 50(a).  *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir.

1   1989); *see also Vahora*, 2019 WL 5960205, at \*5.

2          A motion for judgment as a matter of law under Rule 50(b) is appropriate when the

3   evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the

4   jury. *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009); *Josephs v.*

5   *Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). All evidence must be viewed in the light most

6   favorable to the non-moving party, and the Court must draw all reasonable inferences in the non-

7   moving party's favor. *Go Daddy Software, Inc.*, 581 F.3d at 961. In evaluating a motion for

8   judgment as a matter of law, the Court may not make credibility determinations or weigh the

9   evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A jury verdict

10  "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a

11  contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *see also Fox v. Harry*

12  *Winston, Inc.*, No. 8:22-CV-00381-DOC-ADS, 2023 WL 7280462, at \*2 (C.D. Cal. 2023), *aff'd*,

13  No. 23-55639, 2024 WL 4589074 (9th Cir. 2024).

14         Defendants argue, "[Plaintiff's] evidence, which was almost exclusively based on his and

15  other inmates' testimony, was incomprehensibly contradictory, did not sufficiently identify any

16  specific behaviors by any specific Defendant, and failed to meet the requisite legal standards."

17  (*See* Docs. 202, 207.) Defendants direct the Court to the testimony of witnesses Eric Eaves,

18  Christopher Bautista, Anthony Ramirez, Jaime Hernandez, and Matthew Frushon (*Id.* at 8-11)

19  emphasizing inconsistent statements and "material and impossible contradiction[s]." (Doc. 207 at

20  5.)

21  **B.    Trial Testimony**

22         At trial, Mr. Bush testified that on March 20, 2019, he was housed at North Kern State

23  Prison. (Doc. 217 at 28) On that day, he saw 10 to 12 members of the Investigative Services Unit

24  enter his cell block due to a fight involving other inmates in the dayroom. *Id.* Of these, about half

25  came to his cell. *Id.* at 32. One officer, Jensen, ordered Plaintiff to back out of the cell. *Id.* at 32-

26  33. At this time, Plaintiff had been seated on his bunk. *Id.* at 33. While doing so, Plaintiff dropped

27  a syringe in the toilet, which had been in his pocket. *Id.* He was then "yanked" out of the cell and

28  placed in handcuffs by Ibarra. *Id.* He knew it was Ibarra, because he read Ibarra's nametag. *Id.*

1  Next, Ibarra and others pulled him to the side of the cell. *Id*. at 33-34. Ibarra then "threw"

2  Plaintiff to the ground, which caused him to land on his chest. *Id*. at 34. Ibarra crossed Plaintiff's

3  legs and pushed them up to meet his hands. *Id*. at 34. As a result, plaintiff was in pain and fearful.

4  *Id*. at 34-35. He felt pain in his shoulder. *Id*. at 35. After this, he was kicked on his right side, but

5  he did not know by whom. *Id*. This caused pain in the "side/stomach" and in his back. *Id*. The

6  kick was painful. *Id.* He did not know who kicked him, and when he tried to look to see who

7  kicked him, he was hit on the "back of the right side" of his head. *Id*. He knew who hit him the

8  first time in the head, but he did not testify who it was. *Id*. at 36 He then tried to look to the left to

9  see who hit him, and he was kicked or hit in the ear. *Id*. at 35. He said he did not know who hit

10  him in the head the second time. *Id*. Soon thereafter, Plaintiff filed a jail complaint against Ibarra

11  in which he said that Ibarra "slammed [him] to the floor, and he held my legs in a hog-tied

12  position." *Id*. at 52.

13  During cross-examination, Plaintiff clarified his earlier testimony and said that he was

14  kicked three times during the incident. (Doc. 217 at 63-64) He was kicked on the right side once

15  and on either side of his head one time. *Id*. He did not know who kicked him. *Id*. at 63-64. He

16  admitted that this testimony was consistent with what he had written in his grievance submitted to

17  the prison at the time of the event. *Id*.

18  Plaintiff testified that two officers Jensen and Lozano, entered his cell. (Doc. 217 at 65)

19  Plaintiff then admitted that at his deposition he testified it was Jensen and not Ibarra, who placed

20  him in handcuffs. *Id*. at 60. He clarified that he was standing while he was being handcuffed and

21  that he was inside the cell when this occurred. *Id*. He was not carried or dragged out of the cell.

22  *Id*. at 65. He testified that Ibarra then slammed or threw him to the ground and came down to the

23  ground with him while on Plaintiff's back. *Id*. 60-61. He testified that only Ibarra brought him to

24  the ground (*Id*. at 62) and only Ibarra held him down "in a hog-tied position" (*Id*.) during which

25  time he was kicked the three times. *Id*. at 64. He also testified that at his deposition he said that he

26  did not know who struck him in any of the three areas and that no one stood on him or placed

27  their knee on his neck *Id*. at 63-64. He denied that he had been punched repeatedly in the

28  stomach, face, ribs or back. *Id*. at 65-66. He said that he was not screaming during the incident

1  but that he made a loud groan. *Id*. at 67. He testified that no one kneed him on his neck, and no

2  one stood on his head. *Id*. at 64.

3        Plaintiff presented testimony of other witness who told varying accounts of the events,

4  most of which were contradicted by Plaintiff. Plaintiff called Eric Eaves, a former inmate, who

5  testified that he saw the events from his cell on the upper tier. He testified that Plaintiff was

6  dragged out from the cell by two officers by his ankles, while he was in a prone position with his

7  legs "shoved up towards his back." (Doc. 194 at 38-39, 59, 61) Eaves said, "multiple officers

8  were on top of him, punching him" and at least one officer kicked him. *Id*. at 39. He said there

9  were at least five or six officers striking or kicking Plaintiff, though he could not identify any of

10 them. *Id*. at 42. As to the kick, he said it landed on the right side of Plaintiff's body, and it "was as

11 if somebody were kicking a soccer ball or a football down a field of some sort, like it was two

12 steps with a boot is basically what it was." *Id*. at 40. He said the kick "stood out in his mind," and

13 that he was reasonably sure that the officer who kicked Plaintiff was a blond female." *Id*. at 67.

14 He testified that the kick was so hard that it lifted Plaintiff off the ground. *Id*. at 68. Eaves

15 testified that two officers—one on each side—took his arms and then they "hogtied" him. *Id*. at

16 61. Then, the officers handcuffed Plaintiff. *Id*. at 62. He then testified that not all of the five or six

17 officers were striking Plaintiff. *Id*. at 65. He said two of the officers had their knees on Plaintiff,

18 with one kneeing him on the neck and the other on the lower back. *Id*. at 65.

19       Plaintiff next called inmate, Matthew Frushon, whose testimony was read into the record.

20 (Doc. 194 at 80-81) He testified that he saw between four and six officers go into Plaintiff's cell

21 and then they carried or dragged Plaintiff out, with his hands and feet handcuffed. *Id.* at 81, 84,

22 93-94. Though he saw Plaintiff on his stomach on the ground, he did not see officers strike

23 Plaintiff. *Id*. at 81-82. He recalled an officer standing on Plaintiff's "back, his feet, his hands, his

24 head," (*Id*. at 87) and saw four officers in total standing on Plaintiff. *Id*. at 88.

25       Upon being refreshed from his statement at the time, he agreed that he said at that time

26 that, "They pulled him out and slammed him down and did some hogtie shit." (Doc. 194 at 90)

27 He continued, "They dragged him a little bit, then lifted him and carried him out like that. They

28 roughed him up pretty good to get him to cuff up." *Id*. at 91. He did not identify who pulled

1   Plaintiff out of the cell or who stood on him. *Id*.

2       Plaintiff next presented the testimony of Anthony Ramirez, an inmate who was housed on

3   over and to the side of Plaintiff's cell. (Doc. 194 at 104) He heard a noise and looked out the

4   corner of his window and saw Plaintiff on the ground and "[t]hey were on top of him, grabbed

5   him, [and were] attacking him." *Id*. at 106. Ramirez saw the officers on top of Plaintiff and

6   kicking him. *Id*. at 107, 108. Ramirez said he saw at least two officers kick Plaintiff "multiple

7   times." *Id*. at 114. He admitted that at the time of his deposition he said Plaintiff was kicked "only

8   once" (*Id*. at 119) and that he had testified, "I mean, I don't remember nothing, man." *Id*. at 116.

9       Plaintiff next presented inmate-witness Christopher Bautista. Bautista was celled next to

10  Plaintiff's cell. (Doc. 194 at 123) He reported that he saw Plaintiff being dragged from his cell.

11  *Id*. at 125. Once out of the cell, he saw "a couple" officers, "[k]ind of beating on him a little." *Id*.

12  at 126. He clarified they were "hitting on him, kneeing him," and they hit him "a couple of

13  times." *Id*. They hit Plaintiff before and after he was handcuffed. *Id*. He said he saw Hernandez

14  "socking" Plaintiff using his hands and feet. *Id*. at 129, 135. He testified that Hernandez punched

15  Plaintiff in the stomach, ribs and face and kneed him on his back, legs and "everywhere." *Id.* at

16  139-140. He testified that one officer was holding Plaintiff down by pushing him down on the

17  neck and another officer was pressing down on Plaintiff's side. *Id*. at 144. Bautista admitted that

18  at the time of the events, he was interviewed and told the interviewing officer that he could not

19  see the events "too well" because his cellmate was standing at the door and looking out the

20  window. (Doc. 194 at 145)

21      Plaintiff presented the testimony of his cellmate, Jaime Hernandez, via his deposition

22  transcript.  (Doc. 194 at 166-185) In this testimony, Jaime[7] said that correctional officers, Jensen,

23  Lozano and Hernandez, entered the cell. *Id*. at 168. Hernandez was standing to Jensen's left, with

24  Lozano on the right. *Id.* Four other officers waited outside of the cell. *Id*. at 168-169. Jensen

25  grabbed Bush, who was sitting on the toilet while going to the bathroom, and "threw" Bush to one

26  of the others. *Id*. That officer pushed Plaintiff to the ground into a "sitting" and "pretzel" position

27

28  [7] The Court refers to cellmate, Jaime Hernandez, as "Jaime," to distinguish him from the defendant, Everardo Hernandez.

1   and then the other officer handcuffed Plaintiff. *Id*. at 169-170, 171, 184. Jaime said that he

2   "thinks" it was Hernandez who pushed[8] Plaintiff to the ground. *Id*. at 171. Jaime did not know

3   who handcuffed Plaintiff. *Id*. Next, Jensen "threw" Plaintiff out of the cell by "dragging" him. *Id*.

4   After Plaintiff was out of the cell, Jensen passed him to Hernandez. *Id*. at 172. While he was

5   being cuffed, he heard scuffling outside the cell and Plaintiff screaming in pain. *Id*. He reported

6   that after he was dragged out of the cell, he was screaming and "talking shit," so Hernandez told

7   him to "Shut the fuck up" and slapped him two or three times. *Id*. at 174. Jaime did not see

8   anyone kick Plaintiff. *Id*.  Jaime and Plaintiff were escorted out of the cellblock at the same time

9   by the same officers[9]. *Id*.

10       Plaintiff called Ibarra to testify. (Doc. 194 at 185-226) Ibarra testified that he placed the

11  handcuffs on Plaintiff, but he did not cause the injuries about which Plaintiff was complaining. *Id*.

12  at 188-189. Plaintiff also called Hernandez. (Doc. 194 at 226-249) Hernandez testified that he did

13  not cause any of the injuries claimed by Plaintiff. *Id*. at 229. He said that he did not know whether

14  any other officer used force on Plaintiff.  *Id*. at 233-234. He said that when he heard the alarm, he

15  went to the building where Plaintiff was housed. *Id*. at 239-241. As he entered the building, he

16  heard a command to "Get down," and he saw inmates lying prone on the floor. *Id*. at 245-246. He

17  stopped and monitored these inmates. *Id*. He did not know Plaintiff and did not see him on the

18  day of the event or on any day after. *Id*. He denied that he slapped Jaime and denied that he

19  assaulted Plaintiff. *Id*. at 247-248.

20       At the conclusion of the evidence, plaintiffs' counsel argued that Mr. Bush was

21  "slammed" to the ground and held there by Ibarra and that Hernandez struck him. (Doc. 217 at

22  157) He argued also that Hernandez also "slammed" plaintiff to the ground. *Id*. at 157. He also

23  argued that plaintiff was beaten[10] (*Id*. at 134, 136, 143, 145, 151, 162), he was struck (*Id*. at 134,

---

[8] Despite the questions by Plaintiff's counsel, Jaime said that the officer "pushed" Plaintiff to the ground. He did not say that the officer "threw" Plaintiff to the ground. (*Id*. at 170, 171.)

[9] Jaime said he was escorted out by Ibarra and Ceja, and Plaintiff was escorted out by three other officers, though he could not recall by whom.  (*Id*. at 174.)  He saw this because Plaintiff was walking in front of him.  (*Id*.)

[10] Generally, to be "beaten," means that the person is "repeatedly and violently" struck, "so as to hurt or injure them, typically with an implement such as a club or a whip." Here, Mr. Bush denied being repeatedly hit or struck. He testified he was kicked three times.

1    155, 161), hit (*Id*. at 135, 155, 156, 158, 159, 161), punched (*Id*. at 151, 155, 157) and that he was

2    screaming (*Id*. at 135). He argued that officers were on top of Mr. Bush. (*Id*. at 135, 159)

3          After the presentation of the plaintiff's evidence, Defendants moved for judgment as a

4    matter of law pursuant to Federal Civil Procedure Rule 50(a). The motion as to Mr. Hernandez

5    was based upon the conflicting testimony of the Plaintiff and witness Bautista.  When arguing the

6    Rule 50 motion, defense counsel did not dispute that Bautista's testimony was inconsistent with

7    Mr. Bush's. However, counsel argued that it was a credibility dispute that the jury should resolve.

8    The Court deferred ruling on Defendants' Rule 50 motion and submitted the case to the jury.

9    (*Id.*)

10         The jury returned a verdict finding in favor of Jose Ceja but found that Everardo

11   Hernandez and Pascual Ibarra were liable for the use of excessive force.  The jury awarded

12   compensatory damages in the amount of $100,000 against Hernandez and $150,000 in

13   compensatory damages against Ibarra.  (Doc. 181 at 2.)  The jury found also that Plaintiff should

14   be awarded punitive damages. (*Id.*) After a second trial phase, in which the defendants testified

15   about their financial conditions, the jury then awarded $25,000 in punitive damages from each

16   defendant.  (Doc. 183 at 1.)

17         Pursuant to Federal Civil Procedure Rule 50(b), Defendants filed a renewed motion for

18   judgment as a matter of law with the alternative request for a new trial or alter of the judgment

19   under Federal Civil Procedure Rule 59 (Doc. 202) and an Administrative Motion to Establish

20   Briefing Schedule on Post-Trial (Doc. 203).    On March 29, 2024, Defendants supplemented its

21   Rule 50(b) motion with additional briefing (Doc. 207), and Plaintiff timely filed its Opposition

22   (Doc. 212).  Defendants filed a Reply (Doc. 213) on May 17, 2024.  Pending before the Court is

23   Defendants' Rule 50(b) renewed motion for judgment as a matter of law and alternate request for

24   a new trial or alter of the judgment (Doc. 202).

25                                     **DISCUSSION**

26         "A motion for a judgment as a matter of law is properly granted only if no reasonable

27   juror could find in the non-moving party's favor.'"  *Fox*, 2023 WL 7280462, at *2 (C.D. Cal.

28   2023), a*ff'd*, 2024 WL 4589074 (9th Cir. 2024) (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068,

1    1072 (9th Cir. 2005)).  Therefore, a jury's verdict must be upheld if it is supported by substantial

2    evidence.  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1226 (9th Cir. 2001*).*

3    Substantial evidence is "evidence adequate to support the jury's conclusion, even if it is also

4    possible to draw a contrary conclusion."  *Id.*; *see also Pavao*, 307 F.3d at 918.

5         Defendants contend Plaintiff failed to meet his burden to prove Hernandez violated the

6    Eighth Amendment because: (1) "[o]nly two witnesses identified Defendant Hernandez as being

7    involved with the alleged incident [,] but their accounts are inconsistent with each other [;]" and

8    (2) Plaintiff's testimony contradicted and "disavowed" those testimonies.  (Doc. 202 at 12.)  For

9    similar reasons, Defendants contend Plaintiff failed to meet its burden regarding Ibarra.  (*Id.* at

10   13.)  Defendants assert Plaintiff testified that Ibarra "handcuffed him" and "threw him into the

11   ground" but "his testimony stops short of suggesting that he was injured in any way by this

12   action.  There is no testimony that [Defendant] Ibarra struck Bush or otherwise applied force with

13   the sole purpose to cause harm."  (*Id.*)  Moreover, "no other witness supported this account."

14   (*Id.*)  In response, Plaintiff reiterates that "[t]he trial was a credibility contest," (Doc. 212 at 5),

15   and that "Rule 50(b) review simply does not allow the Court to assess credibility or reweigh the

16   evidence."  (*Id.* at 6, 24–25, 28–29, 30 ("[A]ll the inconsistencies and contradictions raised by

17   Defendants were within the jury's power to resolve how they did." (*Id.*)  Plaintiff's argument

18   misses the point.

19        Though the jury members were obligated to evaluate the credibility of the testimony, the

20   Plaintiff cannot recover for injuries he did not suffer. Because he testified that he was taken to the

21   ground and kicked three times, the associated injuries constitute for what he could recover

22   damages. This testimony, moreover, was consistent with the information he included in his

23   grievance form filed soon after the event and it was consistent with what he testified at his

24   deposition. This is not a situation in which the plaintiff was unable to perceive the force was used

25   on him or where on his body force was applied.  He knew who took him to the ground and held

26   him there. He knew how many times he was kicked and where. He knew no one stood on his

27   body or kneed him. This isn't a question of credibility but a question of whether Plaintiff can

28   recover for events and injuries that he stated in sworn testimony did not occur. His attorneys

1    cannot "make" his claim into one that includes more injuries and more acts the defendants, which

2    are contrary to confines of the claims stated by the plaintiff. The credibility determinations the

3    jury was entitled to resolve—which it did—was whether Ibarra "threw" Plaintiff to the ground,

4    held him down in a "hog-tied" position and caused him injuries and whether Hernandez kicked

5    him at least one time. Setting aside the damages question, the Court disagrees with the defense

6    that there was insufficient evidence to support these determinations, which the jury resolved in

7    Plaintiff's favor.

8           Contrary to Defendants' contention, the testimony above supports the jury's finding that

9    Hernandez and Ibarra used excessive force.  For example, Jaime, Bautista, and Ramirez to some

10   extent, identified Hernandez as one of the officers that used force on Plaintiff while he was

11   compliant and handcuffed.  Jaime and Bautista identified Hernandez by name, uniform color, and

12   badge.  Plaintiff identified Ibarra as the officer who slammed him to the ground and who held him

13   there.  Plaintiff also identifies evidence within the record showing all elements to an Eighth

14   Amendment excessive force claim were met.  (*See* generally Doc. 212.)  Plaintiff points to the

15   testimony of Jaime and Eaves; the events following the alleged attack (*Id.* at 9); the medical unit

16   visits and documents of the incidents (*Id.* at 11); the various witnesses testifying to Plaintiff's

17   alleged pain; and Ibarra's report submitted after the incident and stating, "force was used" (*Id.* at

18   11).  A reasonable jury could find Plaintiff met its burden as to both Hernandez and Ibarra.

19          To the extent Defendants argue the supporting testimony is too contradictory rendering it

20   uncorroborated and unreliable, the Court also disagrees.  Plaintiff identified corroborated

21   testimony from which a reasonable jury could conclude both Hernandez and Ibarra subjected

22   Plaintiff to excessive force.  Moreover, considering the jury found in favor of defendant officer

23   Ceja confirms the jury assessed the testimony for contradictions and corroboration.

24          Alone, the fact Plaintiff's own testimony undermines and contradicts the testimony of

25   some witnesses, is not a sufficient basis for granting Defendants' renewed motion for judgment as

26   a matter of law. The evidence highlighted in Defendants original motion and supplemental brief

27   are instances of contradictory or conflicting testimony equating to witness credibility, and the

28   Court instructed the jury on such matters.  The Court instructed the jury to consider that "two

13

1   people may see the same event but remember it differently," but not to "decide that testimony is

2   untrue just because it differs from other testimony." (Doc. 184 at 4; *see also* Model Civil Jury

3   Instruction No. 1.14.) Acting in accordance with the duty imposed and the Court's instruction,

4   the jury found credible testimony showing the defendants used excessive force. The duty to

5   determine and ascertain credible testimony belongs to the jury.

6       Though the testimony and evidence support contrary conclusions, substantial evidence

7   supporting the verdict is the threshold of inquiry and sole requirement under the judgment as a

8   matter of law standard. In other words, the Court agrees that Bush's witnesses contradicted each

9   other, and troublingly, that Bush's own testimony contradicted that of his key witnesses, but this

10  is not a basis to grant a Rule 50(b) motion. Accordingly, the Court finds there was substantial

11  evidence supporting the jury's verdict finding Hernandez and Ibarra guilty of using excessive

12  force in violation of Plaintiff's Eighth Amendment rights. Having found substantial evidence, the

13  Court may not substitute its view of the evidence for that of the jury and **DENIES** Defendants'

14  renewed motion for judgment as a matter of law.[11]

15                  **II.    ALTERNATIVE MOTION FOR A NEW TRIAL**

16      Defendants' renewed motion for judgment as a matter of law includes an alternative

17  request for a new trial under Federal Civil Procedure Rule 59(a). *See* Fed. Civ. P. 50(b) "[T]he

18  movant may file a renewed motion for judgment as a matter of law and may include an alternative

19  or joint request for a new trial under Rule 59."

20      In moving for a new trial, Defendants contend a new trial is warranted "because the jury

21  was not provided the correct excessive force standard." (Doc. 202 at 14.) Defendants argue the

22  "malicious and sadistic' language is 'critical'" to Eighth Amendment excessive force claims and

23  omitting the language from the instruction lowers the legal standard. (*Id.* at 14-15.) Defendants

24  assert the omission of "maliciously and sadistically" from the excessive force instruction removed

25  _____

26  [11] That being said, the Court has serious concerns about Plaintiff's counsel presenting testimony that they
    knew to be false. Notably, the Plaintiff knew no one stood on his head, no one other than Ibarra held him
27  down, Hernandez did not slam him to the ground, and he knew he was kicked three times, rather than
    having been hit, punched or struck. Through discovery, the defense knew that Plaintiff did not contend that
28  much of the events described by the inmate-witnesses occurred. Even still, the defense did not apprise the
    Court of the situation and did not seek to preclude this testimony.

1   the "legal requirement that Bush prove [the defendants] acted 'maliciously and sadistically' for

2   the purpose of causing harm" and "unfairly and improperly lower[ed]" Plaintiff's burden thus,

3   subjected Defendants to an unfair trial.  (*Id.*) Finally and as an alternative remedy, Defendants

4   seek to have the Court reduce the damage award, which the Court construes as a request for a

5   conditional order of remittitur under Rule 59.

6

7   **LEGAL STANDARD**

8   **A.    Federal Civil Procedure Rule 59 Standards**

9        Under Federal Civil Procedure Rule 59, a district court has discretion to grant a new trial,

10   even though the verdict is supported by substantial evidence, "for any reason for which a new

11   trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

12   Rule 59(a) does not specify the grounds on which a motion for a new trial may be granted, but the

13   Ninth Circuit has instructed courts of its parameters and bounds, restricting the grounds

14   permitting a new trial to grounds that "have been historically recognized." *Molski v. M.J. Cable,*

15   *Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d

16   1020, 1035 (9th Cir. 2003)).  The United States Supreme Court notes the list of "historically

17   recognized" claims constituting a new trial is not limited, but such claims include "the verdict is

18   against the weight of the evidence, [] the damages are excessive, or [] for other reasons, the trial

19   was not fair to the party moving. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940);

20   *see also Molski*, 481 F.3d at 729.  Accordingly, a court may grant a new trial if, in its view, the

21   verdict is contrary to the clear weight of the evidence, and the evidence adduced at trial is

22   insufficient to support the jury's verdict. *Molski*, 481 F.3d at 729.  A new trial is appropriate

23   "only if the verdict is contrary to the clear weight of the evidence, is based upon false or

24   perjurious evidence, or to prevent a miscarriage of justice." *Id.; see also Passantino v. Johnson*

25   *& Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).  A court may also grant a

26   new trial if the damages awarded at trial are excessive or if the trial was otherwise unfair.  *See In*

27   *re: NFL "Sunday Ticket" Antitrust Litig.,* No. ML 15-02668 PSG (SKX), 2024 WL 3628118, at

28   *2 (C.D. Cal. 2024) (citing *Montgomery Ward & Co.*, 311 U.S. at 251)).

1    While permissible for the Court to weigh the evidence and credibility of the witnesses,

2    under a Rule 59(a) standard of review, "the court is not justified in granting a new trial merely

3    because it might have come to a different result from that reached by the jury." *Vahora*, 2019

4    WL 5960205, at *3 (citing *Roy v. Volkswagen of Am.*, 896 F.2d 1174, 1176 (9th Cir. 1990)

5    (quoting *Wilhelm v. Associated Container Transportation (Australia) Ltd.,* 648 F.2d 1197, 1198

6    (9th Cir. 1981) (internal quotations omitted)); *see also Silver Sage Partners, Ltd. v. City of Desert*

7    *Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) ("However, a district court may not grant a new

8    trial simply because it would have arrived at a different verdict."); *Bandary v. Delta Air Lines,*

9    *Inc.*, 623 F. Supp. 3d 1071, 1075 (C.D. Cal. 2022).

10    When evaluating whether a damage award warrants remittitur or a new trial, the Court

11    must give deference to the jury's findings. *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415,

12    434-435 (1996); *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 95 F.3d 1422, 1434–35 (9th

13    Cir. 1996). The Court must uphold the jury's finding on the amount of damages, unless it is

14    "grossly excessive or monstrous, clearly not supported by the evidence, or based only on

15    speculation or guess work. (*Del Monte* at 1435) or "shocking to the conscience." *Brady v. Gebbie*,

16    859 F.2d 1543, 1557 (9th Cir. 1988).

17    **DISCUSSION**

18    **B.    Eighth Amendment Excessive Force Instruction: "Maliciously and Sadistically"**

19    **Language**

20    Defendants challenge the excessive force jury instructions asserting "the instructions

21    given contradict the Ninth Circuit Model Civil Jury Instructions and long-established Supreme

22    Court precedent." (Doc. 202 at 15.) Defendants argue the Eighth Amendment Excessive Force

23    Instruction was erroneous because it omitted the "maliciously and sadistically" language from the

24    elements of the claim and lowered the legal standard. (*See generally* Doc. 202 at 5.) Defendants

25    contend the omission substantively altered the Eighth Amendment excessive force claim by

26    removing a "critical" "subjective intent" element which converted the Eighth Amendment claim

27    into a Fourth Amendment excessive force claim. (*Id.*; *see also* Doc. 207 at 6, "That omission

28    effectively turned the Eighth Amendment claim, which contains a 'critical' 'subjective intent'

1  element, into a Fourth Amendment excessive force claim, which is governed by 'the objective

2  reasonableness' test.") Defendants also claim the omission contributed to the punitive damages

3  issue. (*Id.* at 16, "As to punitive damages, omitting the 'malicious and sadistic' language from

4  the excessive force instruction created an unfair presumption that punitive damages were

5  mandatory upon a finding of liability.") Defendants rely on *Rodriguez v. Cnty. of Los Angeles*,

6  891 F.3d 776 (9th Cir. 2018), *Hudson v. McMillian*, 503 U.S. 1(1992), and directs the Court to

7  the Ninth Circuit Model Civil Jury Instruction for Eighth Amendment excessive force claims

8  asserting the model instruction's use of "maliciously and sadistically" in the excessive force claim

9  elements shows the language is required. (*See generally* Doc. 202.)

10      *1. Hoard v. Hartman*

11      The parties rely on *Hoard v. Hartman's* interpretation of the Eighth Amendment's

12  excessive force "maliciously and sadistically" language. (*See* generally Doc. 207 at 25.) [12]

13  Defendants reference *Hoard* in its pending motion arguing the "maliciously and sadistically"

14  language is required. Defendants state, "*Hoard* found that providing the plain dictionary

15  definition of these terms, rather than their legal meanings, was improper" and "[n]o Supreme

16  Court or Ninth Circuit precedent contradicts the inclusion of these terms in jury instructions."

17  (*See* Doc. 202 at 15.) [13]  (*Id.*) The Court appreciates the parties' *Hoard* arguments, but again, it

18  disagrees.

19      The question before the Ninth Circuit was "whether proof of sadism is *required* for

20

_____

21  [12]  The Court acknowledges Plaintiff's request to incorporate its previous *Hoard v. Hartman* argument by
   point of reference (*see* Doc. 212 at 34, n. 3) "in a desire to preserve the error argument without making a

22  long brief longer." (*Id.*)  Thus, [u]nderstanding that the Court has ruled … and disagreed with [Plaintiff's]
   contention that, after *Hoard v. Hartman*, including the two words is error; instead of omitting them for

23  other reasons. ECF No. 202-5 at 9:15-11:1[;]" Plaintiff's "past argument on that point [see Doc. 155 at 9-
   12]" is hereby incorporated by reference. (*Id.*; see also Doc. 217 at 11 ("THE COURT: I don't think that's

24  true. Because I don't think it's error to include it at all. In fact, the Ninth Circuit has not taken steps to
   change its model structure despite it just recently issued yet another set. I think it's Supreme Court

25  language. This isn't something that the Ninth Circuit, we just pulled out of a hat. But I personally think
   it's easier to understand without it.")

26  [13]  Defendants proffered a similar argument when submitting its Proposed Eighth Amendment Jury
   Instruction (*Id.* at 146.) Defendants provided the following parenthetical citation and explanation in

27  support of its proposed instruction: *Hoard v. Hartman*, 904 F.3d 780, 789 (9th Cir. 2018) "the phrasing
   'maliciously and sadistically' is not just acceptable but is warranted provided that the court does not give

28  definitions of those words which impose additional burdens." (*Id.*)

1   excessive force claims [;]" and the Ninth Circuit held that it is not.  *Hoard*, 904 F.3d at 789

2   ("There is no doubt that the Constitution does not require proof of sadism, or pleasure from

3   extreme cruelty, for excessive force claims brought under the Eighth Amendment." *Id.* at 787).

4   The Court explained that it has "never required proof of sadism or masochism in excessive force

5   cases" (*Id.* at 789) for "[a] correctional officer who slams an unresisting inmate's head into a

6   concrete floor until he bleeds is therefore no less liable for excessive force if he does so

7   dispassionately than if he does so with pleasure" (*Id.* at 782).  The Ninth Circuit stated the proper

8   assessment of whether "the handling of [an inmate] was for the purpose of maintaining or

9   restoring discipline, or for the malicious and sadistic purpose of causing him harm," requires a

10  court to "examine the need for the application of the measure or sanction complained of, the

11  relationship between the need and the measure or sanction used, the extent of any injury inflicted,

12  and the extent of the surrounding threat to the safety of staff and inmates." *Id.* at 789 (quoting

13  *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993))).  Before reaching its holding, the Ninth

14  Circuit discussed Eighth Amendment progeny such as *Whitley v. Albers*, 475 U.S. 312 (1986) and

15  *Hudson v. McMillian*, 503 U.S. 1 (1992) emphasizing the "core judicial inquiry' in excessive

16  force cases is 'whether force was applied in a good-faith effort to maintain or restore discipline,

17  *or* maliciously and sadistically to cause harm'." *Hoard*, 904 F.3d at 788.  After clarifying the

18  assessment, the Ninth Circuit looked to the matter before it: whether the district court's

19  supplemental instructions to the jury were plainly erroneous.  *Id.* at 787.  Stated differently,

20  whether the district court erred "[b]y instructing the jury that 'maliciously and sadistically for the

21  very purpose of causing harm'" required "having or deriving pleasure from extreme cruelty."

22  The Ninth Circuit held the court had erred because it required the plaintiff to prove the defendant

23  "acted with a subjective state of mind far more demanding than that of intent to harm."  *Id.* at

24  790.  "This instruction saddled Hoard with the unnecessary and exceedingly difficult burden of

25  proving that the officer was not just cruel, but sadistic as well."  *Id.* at 782.  In other words, the

26  district court had erred because it improperly added to the plaintiff's burden of proof.  *Id.* at 790.

27  The Ninth Circuit stated its rationale as well, explaining, "four jurors paused halfway through an

28  eight-hour deliberation to request instructions specifically on the meaning of 'maliciously and

1   sadistically' acting to cause harm [;]" and "[r]ather than instruct the jury that these terms

2   possessed no unique meaning outside of the specific intent to cause harm, the district court

3   informed the jury that they had to find [the officer defendant] derived pleasure from extreme

4   cruelty." *Id.* at 791.

5          Instead of finding the "maliciously and sadistically" language required in the Eighth

6   Amendment excessive force instruction, *Hoard* suggest that the district court should have

7   "instruct[ed] the jury that these terms possessed no unique meaning outside of the specific intent

8   to cause harm." *Id.*  Perhaps more compelling and persuasive is the Ninth Circuit's reasoning,

9   "Sometimes, a word is just a word [; and] there is ample evidence here that the Supreme Court

10  did not intend its use of "maliciously and sadistically' . . . to work a substantive change in the law

11  on excessive force beyond requiring intent to cause harm." *Hoard*, 904 F.3d at 789.  For

12  example, "the Supreme Court has never addressed 'maliciously and sadistically' *separately* from

13  the specific intent to cause harm [;]" and "on one occasion, omitted any mention of 'maliciously

14  and sadistically' altogether and simply explained that 'a purpose to cause harm is needed for

15  Eighth Amendment liability in a [prison] riot case.'" *Id.* (quoting *County of Sacramento v. Lewis*,

16  523 U.S. 833, 854 (1998); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 402 (U.S. 2015) (The

17  Supreme Court provided four factors a court should consider in determining whether "the

18  intentional use of force crosses the constitutional line" and finding the fourth factor, "malicious

19  and sadistic purpose to cause harm," is not a necessary condition for liability.  "To the contrary,

20  the words 'such [factors] as' make clear that the four factors provide examples of some

21  considerations, among others, that might help show that the use of force was excessive.").)

22  *Hoard* concludes, "[its] characterization of this standard in *Kingsley* comports with our

23  understanding that the phrase 'maliciously and sadistically' serves a predominantly rhetorical

24  function." *Hoard*, 904 F.3d at 789.  "Rather than create additional elements for plaintiffs to

25  satisfy, the use of these two terms emphasizes the cruelty inherent in harming an inmate for no

26  other reason than to cause harm." *Id.*

27         Defendants' position mirrors a position the Ninth Circuit rejected.  In *Hoard*, the

28  defendants argued, "the district court did not err in instructing the jury on the meaning of

1    'sadistically' because *Whitley* established that only force applied 'maliciously and sadistically to

2    cause harm' constitutes excessive force." The *Hoard* defendants relied on a string of Eighth

3    Circuit decisions finding, "[t]he word 'sadistically' is not surplusage; 'maliciously' and

4    'sadistically' have different meanings, and the two together establish a higher level of intent than

5    would either alone." *Id.* at 788 (internal quotations omitted).  However, the Ninth Circuit declined

6    to follow the Eighth Circuit's interpretation of *Whitley* cautioning that "[o]pinions, unlike

7    statutes, are not usually written with the knowledge or expectation that each and every word may

8    be the subject of searching analysis.  Sometimes, a word is just a word."  *Id.* at 788-89.

9    Considering the above, the assertion that "[n]o Supreme Court or Ninth Circuit precedent

10   contradicts the inclusion of [the] terms [maliciously and sadistically] in jury instructions" is

11   misleading and seemingly overbroad.  (Doc. 207 at 25); *see also Willis v. Vasquez*, 648 F. App'x

12   720, 723 (9th Cir. 2016).[14]

13          2.   <u>*Rodriguez v. County of Los Angeles* and *Hudson v. McMillan*</u>

14          The Court now turns to Defendants Rodriguez and Hudson arguments which Defendants

15   assert support its contention that Eighth Amendment excessive force instructions require the

16   "maliciously and sadistically' language.  Defendants are correct to cite Rodriguez for discussing

17   the "heightened standard" and "subjective inquiry" of Eighth Amendment excessive force claims.

18   *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 788 (9th Cir. 2018) ("[A] convicted prisoner's

19   excessive force claim under the Eighth Amendment requires a subjective inquiry into 'whether

20

---

21   [14]  In *Willis v. Vasquez*, 648 F. App'x 720, 723 (9th Cir. 2016), the Ninth Circuit considered whether the
     district court erred in denying the defendants' proposed instruction requiring the plaintiff to prove the

22   "'defendants acted maliciously and sadistically for the purpose of causing harm' consistent with the Eighth
     Amendment to prevail on his excessive force claim."  Relying on the Supreme Court's decision *Kingsley*

23   *v. Hendrickson*, 576 U.S. 389 (U.S. 2015), the Ninth Circuit concluded the district had not erred,
     explaining "the Supreme Court held that a pretrial detainee is required to prove only that the force used

24   was objectively unreasonable.  Therefore, the district court did not err in denying [the defendants']
     proposed jury instruction on 'sadistic and malicious' use of force consistent with the Eighth Amendment."

25   *Id.*  The Court understands the facts in *Willis* differ from the facts in the pending matter.  The plaintiff in
     *Willis* was a pretrial detainee whereas Bush is a convicted prisoner.  However, the Court only mentions

26   *Willis* and the Ninth Circuit's holding to highlight the overbroad assertion.  *See also Brewster v. Mills*, No.
     20-CV-03254-HSG, 2022 WL 976973, at *6 (N.D. Cal. 2022) (citing *Bearchild v. Cobban*, 947 F.3d

27   1130, 1044-48 (9th Cir. 2020).  In cases "where there is no legitimate penological purpose for a prison
     official's conduct, such as in the case of sexual assault [,] courts must presume malicious and sadistic

28   intent.")).

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))).  The Ninth Circuit explained, "An Eighth Amendment claim of excessive force "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Rodriguez*, 891 F.3d at 795 (quoting Hudson, 503 U.S. at 6)).  However, the issue before the Ninth Circuit did not concern erroneous Eighth Amendment excessive force jury instructions, and the Court's holding does not concern the "maliciously and sadistically" language.  Contrary to Defendants' reliance, the Court does not find the Rodriguez holding relevant to any of issues before it.  On the other hand, the Court does find the Rodriguez dicta instructive.  For example, when the officer-defendants "attack[ed] the jury's finding that they violated the Eighth Amendment by acting 'maliciously and sadistically,'" the Ninth Circuit found the argument meritless because "there was abundant evidence presented to the jury that [the defendants] inflicted severe injuries on [the plaintiff] while they were not resisting, and even while they were unconscious."  *Id.* at 795.  The Ninth Circuit explained, "[a] jury could reasonably reject [the defendants'] argument that they acted reasonably and instead determine that this force was not part of a 'good-faith effort to maintain or restore discipline [;]'" therefore, the Court "reject[s] [the] sufficiency of the evidence challenge to the jury's finding of a constitutional violation."  *Id.*  Of significance is the Ninth Circuit's reasoning in determining the argument was meritless:

> In effect, they attack the jury's finding that they violated the Eighth Amendment by acting "maliciously and sadistically."  This argument is meritless.  As noted above, there was abundant evidence presented to the jury that appellants inflicted severe injuries on appellees while they were not resisting, and even while they were unconscious.

*Id.*  The Ninth Circuit found the argument meritless because inflicting severe injuries on the plaintiffs while they were not resisting, and unconscious is "maliciously and sadistically" because "[m]ore than *de minimis* force applied for no good faith law enforcement purpose violates the Eighth Amendment.  *Rodriguez*, 891 F.3d at 797 (9th Cir. 2018).  Accordingly, absent the need or circumstance to use force (a good faith law enforcement purpose), applying more than *de minimis*

1    force violates the Eighth Amendment.

2          This Court's understanding is consistent with *Hudson v. McMillian*.  503 U.S. 1 (1992).

3    In *Hudson*, there was no prison disturbance and "no need to use any force since the plaintiff was

4    already in restraints," therefore, the prison guards' attack upon the plaintiff resulted in the

5    infliction of unnecessary and wanton pain.  *Id.*  "Absent such special circumstances, the less

6    demanding standard should be applied."  *Id.*  (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

7    Accordingly, the precedent appears to suggest the "maliciously and sadistically" language is not

8    required in every Eighth Amendment excessive force claim.  "[T]he standard to be used is one

9    that gives "due regard for differences in the kind of conduct against which an Eighth Amendment

10   objection is lodged."  *Hudson*, 503 U.S. at 13 (*quoting Whitley*, 475 U.S. at 320).  As Plaintiff

11   points out, Defendants' legal theory was that no force was used at all because Plaintiff complied

12   with the defendants' orders and request.  Where institutional security is not at stake, the officials'

13   license to use force is more limited.  Accordingly, once the jury determined the institutional

14   security was not at stake; Plaintiff was compliant, reasonable, did not resist; and Defendants used

15   more than *de minimis* force, the jury could reasonably infer Defendants possessed the subjective

16   "malicious and sadistic" intent to cause harm.

17         Moreover, based on Defendants' caselaw, the Court's Eighth Amendment instruction

18   reflects the "maliciously and sadistically" language.  (*See* Doc. 184.)  The Court provided the

19   following instructions:

20              To establish the defendant deprived the plaintiff of this Eighth
                Amendment right, the plaintiff must prove the following elements
21              by a preponderance of the evidence: (1) the defendant used
                excessive and unnecessary force under all of the circumstances; (2)
22              the defendant acted for the purpose of causing harm, and not in a
                good faith effort to maintain or restore discipline; and (3) the acts of
23              the defendant caused harm to the plaintiff.

24              In determining whether these three elements have been met in this
                case, consider the following factors: (1) the extent of the injury
25              suffered; (2) the need to use force; (3) the relationship between the
                need to use force and the amount of force used; (4) any threat
26              reasonably perceived by the defendant; and (5) any efforts made to
                temper the severity of a forceful response, such as, if feasible,
27              providing a prior warning or giving an order to comply.

28   (*Id.*)  The "maliciously and sadistically language" is conveyed through the first part of the

22

1   instruction: "(1) **the defendant used excessive and unnecessary force under all of the**

2   **circumstances**; (2) the **defendant acted for the purpose of causing harm, and not in a good**

3   **faith effort to maintain or restore discipline**; and (3) the acts of the defendant caused harm to

4   the plaintiff." (*Id.*)  The alleged "subjective intent" requirement is mirrored through the factor

5   analysis: "In determining whether these three elements have been met in this case, consider the

6   following factors: (1) the extent of the injury suffered; (2) **the need to use force**; (3) **the**

7   **relationship between the need to use force and the amount of force used**; (4) **any threat**

8   **reasonably perceived by the defendant**; and (5) any efforts made to temper the severity of a

9   forceful response, such as, if feasible, providing a prior warning or giving an order to comply."

10   (*Id.* emphasis added.)  The "maliciously and sadistically" language itself does not provide any

11   substantive value beyond requiring an assessment of the defendant's mindset and intent in

12   applying the alleged force. *See Rodriguez*, 891 F.3d at 788 (citing *Hudson*, 503 U.S. at 7) (In

13   distinguishing a pretrial detainee's Fourteenth Amendment excessive force from a convicted

14   prisoner's Eighth Amendment claim, the Ninth Circuit explained, the pretrial detainee's inquiry is

15   solely objective, but the convicted prisoner's inquiry "requires a subjective inquiry into 'whether

16   force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

17   sadistically to cause harm.'").  *See also Hudson*, 503 U.S. at 7 (stating "whenever prison officials

18   stand accused of using excessive force in violation of the Cruel and Unusual Punishment Clause,

19   the **core judicial inquiry** is set out in *Whitley" v. Albers*, 475 U.S. 312 (1986).)  In *Whitley*, the

20   Supreme Court held "injuries to prisoners do not constitute cruel and unusual punishment when

21   they are inflicted during a prison disturbance that 'indisputably poses significant risks to the

22   safety of inmates and prison staff' **unless force was applied 'maliciously and sadistically for**

23   **the very purpose of causing harm**'." *Hudson*, 503 U.S. at 11-12 (emphasis added).  The

24   Supreme Court further explained the "justification" for a heightened standard sating, "that

25   particularly high standard of proof was required by the exigencies present during a serious prison

26   disturbance." *Id.* In other words, "[w]hen the 'ever-present potential for violent confrontation and

27   conflagration' ripens into *actual* unrest and conflict'," "prison officials must be permitted to 'take

28   into account the very real threats the unrest presents to inmates and prison officials alike'." *Id.*

12-13. "Absent such special circumstances, [] the less demanding standard of 'unnecessary and wanton infliction of pain' should be applied." *Id.* at 13. Therefore, "the unnecessary and wanton infliction of pain standard must be applied with regard for the nature of the alleged Eighth Amendment violation." *Id.* at 11-12.[15]

a.    *The Eighth Amendment Jury Instruction Challenge*

Interpretive differences aside, when a party challenges an individual jury instruction as "incomplete, and therefore incorrect, statement of the law," the proper test is whether the instructions, taken as a whole, fairly and adequately cover the issues presented, correctly state the law, and not mislead the jury. *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) (*quoting White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002)); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011). Moreover, a party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.'" *Dang, 422 F.3d at 804-05 (quoting Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)); *see also Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). A district court's "[u]se of a model jury instruction does not preclude a finding of error." *Dang, 422 F.3d at 805* (quoting *United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993)). "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Dang, 422 F.3d at 804-05 (quoting Swinton v. Potomac Corp.,* 270 F.3d 794, 802 (9th Cir. 2001).

Taken as a whole, the Court finds the instruction given fairly and adequately covered the issues presented in the case, correctly stated the law, and was not misleading. Due to the conflicting positions of the parties, that Defendants used excessive force or Defendants used no force at all, the "maliciously and sadistically" language was not required. Eliminating this language minimized the very confusion that hindered and misled the *Hoard* jury. *See Hoard*, 904 F.3d at 786 ("Midway through the jury's deliberations, . . . four of the jurors sent a signed note

---

[15] The Supreme Court also explained the "wanton and unnecessary" inquiry and a determination may include an evaluation of the following factors: the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

1    asking the district court to 'provide a definition for maliciously and for sadistically as it pertains

2    to this case.").

3        As for Defendants' contention that straying from the model instruction is error warranting

4    a new trial, the Court disagrees.  The "[u]se of a model jury instruction does not preclude a

5    finding of error" whether the inquiry is whether "the substance of the applicable law is fairly and

6    correctly covered."  *Dang*, 422 F.3d at 805 (internal citation omitted).  Though model instruction

7    9.3 includes the "maliciously and sadistically" language and the Court's given Instruction Nos. 9-

8    10 omitted the language, the Court "fairly and correctly" covered the proper legal standard

9    governing excessive force claims under the Eighth Amendment. Even if omitting the language

10   was error, the Court would find the error harmless and not sufficiently prejudicial to warrant a

11   new trial. *See Dang*, 422 F.3d at 805. Defendants fail to properly assert prejudicial error as its

12   brief lacks an argument and analysis. Thus, the Court **DENIES** Defendants' motion for a new

13   trial on these grounds.

14       **C. Damages under the PLRA**

15        Defendants argue the jury's pain and suffering award "is simply untethered to the

16   evidence" and "not reasonably calculated based on the evidence."  (Doc. 202 at 16.)  Defendants

17   direct the Court to Plaintiff' admission explaining, "Bush conceded at trial that he did not seek

18   any damages concerning any physical, mental, or long-term injuries and only sought pain and

19   suffering damages." (*Id.* at 15.) Defendants also argue Plaintiff's counsel "improperly urged [the

20   jury] to award damages for emotional injuries not connected to any physical injury" by

21   "improperly and repeatedly refer[ring] to pain and suffering damages as 'pain and fear' damages

22   in closing argument."  (Doc. 207 at 27.)  Defendants contend "[t]here is no legal basis for 'pain

23   and fear' damages [and] 'fear' is not the same as 'suffering' [;]" rather "fear" is a lower bar than

24   "suffering." (*Id.*)  Defendants assert "'[f]ear' refers to an emotional injury, which is not allowed

25   by the PLRA in the absence of a physical injury [;]" and "Counsel's phrasing confused the jury

26   and resulted in a higher award."  (*Id.*)  For these reasons, Defendants contend the Court "should

27   reduce the pain and suffering damages award."  (*Id.*)

28       Plaintiff responds to Defendants PRLA arguments in its opposition asserting Defendants

1    repeatedly waived its "physical-injury requirement" by failing to: "plead it as an affirmative

2    defense in their operative answer" and "identify it as a contested issue in the final pretrial

3    statement and order." (Doc. 212 at 18.)  Moreover, "[w]hen the final pretrial order was issued,

4    neither Ibarra nor Hernandez objected that the requirement was missing." (*Id.* at 19.)  Likewise,

5    Defendants failed to object to the final Damages instruction and "did not raise the requirement

6    until after trial and . . . failed to do so in a way that addressed the real standard of review." (*Id.* at

7    20.)  Alternatively, Plaintiff contends "Defendants are [] barred from raising the physical-injury

8    requirement now under the invited-error doctrine." (*Id.* at 19.)  Notwithstanding waiver, Plaintiff

9    also asserts "a jury could easily have found the physical-injury requirement satisfied" because

10   "[u]nder either Rule 50 or Rule 59's deferential standards, the evidence supports a finding of

11   physical injury." (*Id.* at 21.)

12         The Court agrees the Defendants did not object to the damage instruction. (Doc. 212 at

13   19–20.) Even still, there was no waiver because Defendants could not have known that Plaintiff's

14   counsel would suggest that fear is an independent basis to award damages. However, though

15   Plaintiff's counsel spoke about the fear that Mr. Bush experienced, counsel tied each expression

16   of fear to an act that resulted in physical injury. (Doc. 217 at 159, 161, 162) Thus, the Court does

17   not find that this serves as a basis to grant a new trial.

18       **D.  Additional Sufficiency of the Evidence Arguments- Damage Award**

19            1.   Contrary to the clear weight of the evidence[16]

20         Under Rule 59(a), the district court has "the duty ... to weigh the evidence as [the court]

21   saw it, and to set aside the verdict of the jury, even though supported by substantial evidence,

22   where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the

23   _____

24   [16] Though not explicitly raised in Defendants' motion, it appears Defendants contend there has been a
     miscarriage of justice, based upon their arguments that they received an unfair trial.  The Court liberally

25   construes the assertion under Rule 59 as grounds necessary to prevent a miscarriage of justice.  "[A]
     district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of

26   justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 845-46 (9th Cir. 2014).
     Accordingly, to the extent, Defendants contend the damage award was against the clear weight of the

27   evidence and presents a miscarriage of justice, the Court agrees.  Plaintiff's counsel improper argument
     urging the jury to award damages for injuries he did not suffer and for acts the defendants did not take,

28   causes the Court to be firmly convinced that there has been a miscarriage of justice. Thus, the Court issues
     the conditional remmittur discussed above

1    evidence." *Molski*, 481 F.3d at 729 (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187

2    (9th Cir. 1990)).  The court "can weigh the evidence and assess the credibility of witnesses and

3    need not view the evidence from the perspective most favorable to the prevailing party." *Landes*

4    *Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  But "'[a] district

5    court may not grant a new trial simply because it would have arrived at a different verdict.'"  *In*

6    *re HIV Antitrust Litig.*, 700 F. Supp. 3d 879, 882 (N.D. Cal. 2023) (quoting *Wallace v. City of*

7    *San Diego*, 479 F.3d 616, 630 (9th Cir. 2007)).  After weighing the evidence, the court must then

8    balance two principles:

9    
10   > On the one hand, the trial judge does not sit to approve miscarriages
     > of justice . . . On the other hand, a decent respect for the collective
11   > wisdom of the jury, and for the function entrusted to it in our
     > system, certainly suggests that in most cases, the judge should
     > accept the findings of the jury, regardless of his own doubts in the
12   > matter.

13   *Landes,* 833 F.2d at 1371-72 (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure

14   § 2806, at 48-49 (1973)); *see also Est. of Brown v. Lambert*, 478 F. Supp. 3d 1006, 1018 (S.D.

15   Cal. 2020).  "If, having given full respect to the jury's finding, the judge on the entire evidence is

16   left with the definite and firm conviction that a mistake has been committed, it is to be expected

17   that [s]he will grant a new trial." *Id.*  In other words, "a stringent standard applies" and a "new

18   trial may be granted . . . only if the verdict is against the great weight of the evidence" or "it is

19   quite clear that the jury has reached a seriously erroneous result." *Vahora*, 2019 WL 5960205, at

20   *7 (internal quotations omitted).

21       Defendants argue that Plaintiff sought damages for injuries that he did not suffer.  (Doc.

22   207 at 26) Defendants argue that Plaintiff's counsel argued that the jury should award damages

23   for injuries that Plaintiff specifically disavowed. *Id.*  The Court agrees.

24       As noted above, the Court is concerned about Plaintiff's attorneys presenting testimony

25   from witnesses that Mr. Bush knew to be false. Even still, the Court agrees that the testimony of

26   these witnesses was permissible to prove that that the incident occurred.  However, the

27   presentation was not limited to this and, more troubling, counsel elicited testimony about claimed

28   acts of the defendants and injuries inflicted by them that Mr. Bush said did not happen. During

1   closing argument, Plaintiff's counsel, though first arguing that the contradicting evidence should

2   be considered as evidence that the attack happened, then explicitly and repeatedly urged the jury

3   to award damages for conduct of the defendants that Mr. Bush denied occurred and for injuries

4   that Mr. Buch expressly denied that he suffered.

5       Mr. Bush testified at trial that he was kicked three times; in the right side, and on either

6   side of his head, and this was consistent with his deposition testimony and the grievance he

7   submitted at the time of the events. Despite this, his counsel argued that Mr. Bush had been

8   "beaten" (Doc. 217 at 134, 136, 143, 145, 151, 162), "hit" (*Id*. at 135, 155, 156, 158, 159, 161),

9   "struck" (*Id*. at 134, 155, 161) and "punched" (*Id*. at 151, 155, 157). Counsel argued that officers

10  stood on or were on top of Mr. Bush (*Id*. at 135, 159), though Mr. Bush said no one stood on him

11  or was on top of him other than Ibarra who he claimed held him down. Plaintiffs' counsel argued

12  that Mr. Bush was slammed to the ground by Ibarra *and* Hernandez (Doc. 217 at 157), though

13  Plaintiff testified that only Ibarra did this. Importantly, Mr. Bush did not indicate he could not

14  recall or perceive these events; he testified that these events *did not happen*. Thus, the Court has

15  no confidence that the damages the jury awarded correspond to the injuries Mr. Bush testified that

16  he suffered. As Defendants point out, the compensatory damage award bears no relationship to

17  the injuries that Mr. Bush claimed he suffered.

18      For example, though the jury found, implicitly, that Ibarra slammed or threw Mr. Bush to

19  the ground and held him there, there was no evidence that Ibarra knew that another officer would

20  use this as an opportunity to kick Mr. Hernandez or that there was sufficient time between the

21  kicks for Ibarra to have taken steps to intervene in the additional uses of force. *Robins v.*

22  *Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). Likewise, the imposition of compensatory

23  damages as to Ibarra in the amount of $150,000 and $25,000 in punitive damages is "shocking"

24  and contrary to the weight of the evidence and, more important, contrary to Mr. Bush's claim.

25      Though the jury was entitled to find that Hernandez kicked Mr. Bush at least one time and

26  maybe as much as three times, the Court cannot determine whether the jury awarded damages

27  only for the kick(s) or if it also awarded damages for Hernandez hitting, striking, punching,

28  standing on, beating Mr. Bush or slamming him to the ground. The imposition of damages in the

1   amount of $100,000 and $25,000 in punitive damages is shocking to the judicial conscience[17] and

2   clearly contrary to the weight of the evidence. The jury was not asked to divide its damage award

3   between physical injury and emotional injury, but the evidence of physical injury, indicated that

4   Plaintiff urinated blood at least twice, had blood in his urine caused by injury to his enlarged

5   kidney[18], and he had bruises, all of which resolved quickly. He denied that the emotional injury

6   he claimed was sufficient to require him to need treatment such that, in essence, he made a

7   "garden-variety" emotional injury claim.

8          Had counsel relied only on the evidence from these contradictory witnesses to support that

9   force was used and to outline the injuries Mr. Bush claims he suffered, then the Court would not

10  interfere. However, because counsel encouraged the jury to award damages for acts not taken by

11  Defendants and for injuries Plaintiff did not suffer, the resulting damage award became

12  unconnected to the evidence and the amount awarded is clearly excessive and shocking. *See*

13  *Hawkins v. United States*, 30 F.3d 1077, 1083 (9th Cir. 1994) [Plaintiffs are to be compensated

14  for their losses; not to "win the litigation lottery."]; *Coast Trading Co. v. Cudahy Co.*, 592 F.2d

15  1074, 1083 (9th Cir. 1979) [When awarding compensatory damages, a plaintiff must be made

16  whole but should not receive a windfall.] This conduct has forced this Court to take action to

17  correct the situation. The Court will issue a conditional order of remittitur under Rule 59.

18         The Court must determine the proper amount of damages. In *Hudson v. McMillian*, 503

19  U.S. 1, 4 (1992), the Court affirmed a damage award of $800 after guards punched the plaintiff in

20  the face, chest and stomach and punch and kicked him from behind. Hudson suffered, "minor

21  bruises and swelling of his face, mouth, and lip. The blows also loosened Hudson's teeth and

22  cracked his partial dental plate, rendering it unusable for several months." In *Benton v. Rousseau*,

23  940 F. Supp. 2d 1370, 1379 (M.D. Fla. 2013), the inmate was awarded $45,012 in compensatory

24  and $15,000 in punitive damages after having scarring to his face, due to the use of pepper spray

25  and ongoing headaches and numbness due to being punched and kicked. In *Rodriguez v. Cnty. of*

26  *Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018), the Court affirmed a jury award of $740,000 in

27  _____

    [17] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).

28  [18] The enlarged kidney and the underlying UPJ condition were not caused by the events. Rather, these
    conditions caused him to be more likely to have blood in his urine if his kidney was injured.

compensatory and $210,000 in punitive damages against 19 defendants as to five inmates who were beaten, tased on their buttocks and genital areas, shot with rubber or wooden bullets, had their bones broken and who suffered severe and permanent injuries. In *Willis v. Vasquez*, 648 F. App'x 720, 724, fn.1 (9th Cir. 2016), the Court affirmed the jury's award of damages in the amount of $125,000 in compensatory and $165,000 in punitive damages after the plaintiff "was repeatedly struck with a flashlight and tasered" and was "repeatedly punched . . . in the face." In *Bell v. Williams,* 108 F.4th 809, 834 (9th Cir. 2024), the Court remanded the matter for consideration of a remittitur after the jury award more than $500,000 despite that the incident lasted about two minutes, and he suffered minor injuries which resolved within a few days and had no lasting emotional injury. The Court has also considered the cases cited by Plaintiff (Doc. 212 at 39-40) and by Defendants (Doc. 207). In considering these cases and the conduct of Defendants when interpreted most favorably to the Plaintiff, the Court **DENIES** the motion for new trial conditionally and only if the Plaintiff accepts the remitted judgment as to Ibarra in the amount of $25,000 in compensatory damages and $10,000 in punitive damages and as to Hernandez, compensatory in the amount of $30,000 and $15,000 in punitive damages.

## ORDER

Based upon the foregoing, the Court **ORDERS:**

1.    Defendants' Motion for judgment as matter of law pursuant to Rule 50(b) is **DENIED**.

2.    Defendants motion under Rule 59 for a new trial is **DENIED on the condition** that **within 30 days,** Plaintiff files a notice accepting the remittitur as to Ibarra in the amount of $25,000 in compensatory damages and $10,000 in punitive damages and as to Hernandez, compensatory in the amount of $30,000 and $15,000 in punitive damages. Failing this, the Court will **grant** the motion for new trial.

IT IS SO ORDERED.

Dated:   **May 2, 2025**

_____
UNITED STATES DISTRICT JUDGE